**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

REAL ESTATE BOARD OF NEW YORK, INC.,
NEW YORK STATE ASSOCIATION OF
REALTORS, INC., BOHEMIA REALTY
GROUP, BOND NEW YORK REAL ESTATE
CORP., REAL NEW YORK LLC, LEVEL
GROUP INC., FOUR CORNERS REALTY,
LLC, 21 WEST CORP., 8 WEST 119TH
STREET HDFC,

      *Plaintiffs*,

      v.

THE CITY OF NEW YORK, a municipal entity,
VILDA VERA MAYUGA, as Commissioner of
New York City Department of Consumer and
Worker Protection,

      *Defendants.*

No. 1:24-cv-09678-RA

---

**MOTION FOR THE STATE OF NEW YORK AND**
**NEW YORK DEPARTMENT OF STATE FOR**
**LEAVE TO FILE A BRIEF AS AMICI CURIAE**
**IN SUPPORT OF DEFENDANTS ON FIELD PREEMPTION CLAIM**

The State of New York and the New York Department of State (DOS)
respectfully move this Court for leave to file the attached brief as amici curiae in
support of defendants to urge this Court to reject plaintiffs' claim of field preemption
and to dismiss the cause of action based on it. As described further below, amici's
proposed brief provides important context about the state-law framework that
plaintiffs invoke for their field preemption claim, including the legislative intent,
scope, and objectives of state law. Accordingly, amici's proposed brief will aid the

Court in resolving the field preemption issues raised by the parties' motions. *See Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, No. 11 CIV. 6746 RJH, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) (amicus brief should be allowed "when the amicus has unique information or perspective that can help the court"). Counsel for the parties have been consulted regarding this motion, and all parties have indicated they do not oppose.

Amici have a strong interest in ensuring that state law is not improperly interpreted to invalidate tenant-protective local laws like the FARE Act, while ensuring that state law continues to be properly interpreted to preempt in areas where it was intended to do so. Plaintiffs' field preemption argument stems from an erroneous interpretation of Article 12-A of New York's Real Property Law, which establishes a statewide licensing regime for real estate brokers and salespeople. DOS is the agency responsible for administering the statute, enforcing its provisions, and promulgating regulations to advance its goals.

As the attached brief demonstrates, plaintiffs' field preemption claim should be dismissed for two main reasons. *First*, the brief shows that Article 12-A does not evince any legislative intent to occupy the entire field of all regulation of real estate brokers or transactions. The brief details the factors courts typically consider in evaluating whether state law intends to occupy a given field of regulation. Plaintiffs fail to allege any of the relevant factors here. *Second*, the brief explains that any alleged overlap between the FARE Act and state law would not be enough to constitute field preemption. Even if the FARE Act touched on some of the same issues

that are relevant to Article 12-A, the FARE Act does not undermine the State's interests in maintaining real estate licensing standards. The two sets of laws reflect different concerns, use different mechanisms, and address distinct issues. While a local law that inhibited Article 12-A's operation would be preempted, plaintiffs identify no such problem with the FARE Act.

## CONCLUSION

The Court should grant the State of New York and DOS leave to file the attached brief as amici curiae in support of defendants on the field preemption claim.


Dated:    New York, New York
          March 28, 2025

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        Attorney for the State of New York
                                        and DOS


                                   By:  /s/ *Judith N. Vale*

                                        JUDITH N. VALE
                                        Deputy Solicitor General

                                        28 Liberty Street
BARBARA D. UNDERWOOD                    New York, NY 10005
  *Solicitor General*                   (212) 416-6347
JUDITH N. VALE                          judith.vale@ag.ny.gov
  *Deputy Solicitor General*
KARTIK NARAM
  *Assistant Solicitor General*
      *of Counsel*

# EXHIBIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REAL ESTATE BOARD OF NEW YORK, INC., et al.,

*Plaintiffs*,

v.

THE CITY OF NEW YORK, et al.,

*Defendants*.

No. 1:24-cv-09678-RA

---

**MEMORANDUM OF LAW FOR THE STATE OF NEW YORK
AND THE NEW YORK DEPARTMENT OF STATE
AS AMICI CURIAE IN SUPPORT OF DEFENDANTS
AND DISMISSAL OF PLAINTIFFS' PREEMPTION CLAIM**

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8073

BARBARA D. UNDERWOOD
*Solicitor General*
JUDITH N. VALE
*Deputy Solicitor General*
KARTIK NARAM
*Assistant Solicitor General*
*of Counsel*

Dated: March 28, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT AND INTERESTS OF AMICI CURIAE .................. 1

BACKGROUND ...................................................................................... 3

    A.   Regulatory Framework Under State Law ................................................. 3

    B.   The FARE Act and This Lawsuit ............................................................ 7

ARGUMENT

THE FARE ACT IS NOT FIELD-PREEMPTED BY STATE LAW ........................ 8

    A.   Article 12-A and Attendant State Regulations Do Not Evince an Intent to Occupy the Field of Broker Fee Regulation. ............................ 9

    B.   Even If State Law and the FARE Act Touched on Some of the Same Issues, That Would Be Insufficient to Establish Field Preemption. ........................................................................................ 17

CONCLUSION ...................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*2 Park Ave. Assocs. v. Cross & Brown Co.*,
  36 N.Y.2d 286 (1975) ............................................................. 10

*Albany Area Builders Ass'n v. Town of Guilderland*,
  74 N.Y.2d 372 (1989) ............................................................. 12

*Arash Real Est. & Mgmt. Co. v. New York City Dep't of Consumer Affs.*,
  148 A.D.3d 1137 (2d Dep't 2017) ............................................. 8, 15, 18

*Ba Mar, Inc. v. County of Rockland*,
  164 A.D.2d 605 (2d Dep't 1991) ................................................ 12, 16

*Chwick v. Mulvey*,
  81 A.D.3d 161 (2d Dep't 2010) ................................................. 15

*Consolidated Edison Co. of N.Y. v. Town of Red Hook*,
  60 N.Y.2d 99 (1983) ............................................................... 14

*DiFrancesco v. County of Rockland*,
  41 A.D.3d 530 (2d Dep't 2007) ................................................ 8, 18

*DJL Rest. Corp. v. City of New York*,
  96 N.Y.2d 91 (2001) ............................................................. 9, 15, 18-19

*Doe v. Black*,
  No. 23-cv-6418, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................ 12-14

*Eric M. Berman, P.C. v. City of New York*,
  25 N.Y.3d 684 (2015) ............................................................. 15

*Garcia v. New York City Dep't of Health & Mental Hygiene*,
  31 N.Y.3d 601 (2018) ............................................................. 9, 12

*Hertz Corp. v. City of New York*,
  80 N.Y.2d 565 (1992) ............................................................. 15, 19

*In re Wilson Sullivan Co.*,
  289 N.Y. 110 (1942) ............................................................... 16

*International Franchise Ass'n v. City of New York*,
  193 A.D.3d 545 (1st Dep't 2021) ................................................ 19

**Cases**                                                          **Page(s)**

*J.L. Holding Co. v. Reis,*
    240 N.Y. 424 (1925) ............................................................... 10

*Jancyn Mfg. Corp. v. County of Suffolk.,*
    71 N.Y.2d 91 (1987) ............................................ 9, 11, 14-15

*New York State Ass'n for Affordable Hous. v. Council of New York,*
    141 A.D.3d 208 (1st Dep't 2016) ........................................ 14

*New York State Club Ass'n v. City of New York,*
    69 N.Y.2d 211 (1987) ............................................................ 12

*People v. De Jesus,*
    54 N.Y.2d 465 (1981) ............................................................ 14

*People v. Finnegan,*
    85 N.Y.2d 53 (1995) .............................................................. 15

*Rivkin v. Century 21 Teran Realty LLC,*
    10 N.Y.3d 344 (2008) ............................................................ 16

*Russello v. United States,*
    464 U.S. 16 (1983) ................................................................ 15

**Statutes**

Real Property Law
    § 440 ..................................................................................... 3
    § 440-a ......................................................................... 3-4, 10
    § 441 ............................................................................... 3, 10
    § 441-c .......................................................................... 4, 10
    § 442 ............................................................................. 5, 10
    § 442-i ................................................................................ 4
    § 442-a ......................................................................... 6, 11
    § 442-d ......................................................................... 5, 10
    § 442-k .......................................................................... 4, 11
    § 442-*l* ............................................................................ 11
    § 443 .......................................................................... 4-5, 16
    § 443-a ............................................................................ 14

**Regulations**                                                                          **Page(s)**

39 N.Y. Reg. 79 (Sept. 28, 2016) ........................................................................ 6

43 N.Y. Reg. 17, 18 (Oct. 24, 2012) ................................................................... 6

19 N.Y.C.R.R.
    § 175.7 ................................................................................................ 6, 12
    § 175.19 .................................................................................................... 12
    § 175.25 ................................................................................... 6, 11-12, 19

Admin. Code of City of N.Y.
    § 8-107 ...................................................................................................... 18
    § 8-203 ...................................................................................................... 18
    § 8-204 ...................................................................................................... 18
    § 8-205 ...................................................................................................... 18
    § 20-699.20 .............................................................................................. 17
    § 20-699.21 ............................................................................... 7, 17, 19
    § 20-699.23 ................................................................................................ 7

**Miscellaneous Authorities**

Bill Jacket for ch. 672 (1922)
    S. 822 (Mar. 13, 1922) ............................................................................. 3

Bill Jacket for ch. 579 (1924)
    S. 1348 (Apr. 14, 1924) ............................................................................ 3

Bill Jacket for ch. 726 (1991)
    Budget Report on Bills for S. 5684-A (July 18, 1991) ............................ 4
    Letter from D. Adams to Hon. E. Moore (July 1991) ....................... 5, 16
    Letter from J. Tallon, Jr. to Hon. E. Moore (July 16, 1991) ................... 5

Bill Jacket for ch. 248 (1995)
    Introducer's Mem. in Supp. for S. 3873-B (n.d.) ............................... 4, 11

Bill Jacket for ch. 482 (2002)
    Letter from D. MacKenzie, NYSAR Director of Gov't Affs.,
    to J. McGuire, Counsel to Governor (June 27, 2002) ........................... 11

Dan M. Blumenthal, Practice Commentaries to RPL § 443-a, McKinney's
    Cons. Laws of N.Y. (2015) (Westlaw) .................................................. 14

## PRELIMINARY STATEMENT
## AND INTERESTS OF AMICI CURIAE

In 2024, the New York City Council enacted the Fairness in Apartment Rental Expenses Act ("FARE Act") to address an issue specific to the New York City rental housing market. As a peculiarity of that market, prospective tenants in New York City often must pay a broker fee to a real estate broker they did not hire—and who may be representing the landlord's interests rather than the tenant's. The FARE Act seeks to end this practice and alleviate the economic burdens that such broker fees impose on local tenants. Under the law, a real estate broker who has been retained by a landlord to rent out an apartment, or who has been authorized by a landlord to advertise an apartment, can no longer charge fees to prospective tenants for that apartment. Plaintiffs, a collection of brokers and landlords, bring this lawsuit to challenge the FARE Act, alleging (among other things) that state law preempts the field of real estate brokers or transactions and therefore preempts the FARE Act.

The State of New York and the New York Department of State (DOS) submit this brief as amici curiae in support of defendants to urge this Court to reject plaintiffs' claim of field preemption and to dismiss the cause of action based on it.[1] Plaintiffs' field preemption argument stems from an erroneous interpretation of state law, specifically Article 12-A of New York's Real Property Law, which establishes a statewide licensing regime for real estate brokers and salespeople. DOS is the agency responsible for administering the statute, enforcing its provisions, and promulgating

---

[1] Amici express no view of plaintiffs' other causes of action.

regulations to advance its goals. The State and DOS have a strong interest in ensuring that Article 12-A is not improperly interpreted to invalidate tenant-protective local laws like the FARE Act, while ensuring that state law continues to be properly interpreted to preempt in areas where it was intended to do so.

Plaintiffs' field preemption claim should be dismissed for two main reasons. *First*, Article 12-A does not evince any legislative intent to occupy the entire field of all regulation of real estate brokers or transactions. Plaintiffs fail to allege any of the relevant factors that typically demonstrate such intent. Article 12-A's licensing regime focuses on the standards of competency, honesty, and professionalism that must be satisfied to obtain and maintain a real estate broker license. It does not dictate, with any intent to occupy an entire sphere of oversight, how a broker earns or can claim entitlement to a commission—the issue that the FARE Act primarily regulates. And plaintiffs do not allege that broker fee regulations require statewide uniformity.

*Second*, any alleged overlap between the FARE Act and state law would not be enough to constitute field preemption. Even if the FARE Act touches on issues that are relevant to Article 12-A, the FARE Act does not undermine the State's interests in maintaining real estate licensing standards, which are protected by that Article. The two sets of laws reflect different concerns, use different mechanisms, and address distinct issues. While a local law that inhibited Article 12-A's operation would be preempted, plaintiffs identify no such problem with the FARE Act.

## BACKGROUND

**A.    Regulatory Framework Under State Law**

Article 12-A of New York's Real Property Law establishes a statewide licensing regime for real estate brokers and salespeople. *See* Real Property Law (RPL) § 440-a; S. 822 (Mar. 13, 1922), *in* Bill Jacket for ch. 672 (1922) (law amended the RPL "in relation to the licensing and regulation of real estate brokers and salesmen"). First enacted in 1922, the statute responded to calls for a licensing law that would "prevent unscrupulous exploitation of property by incompetent brokers," "deter dishonest methods," and "generally raise the standard of the Real Estate business." *See* S. 1348 (Apr. 14, 1924), *in* Bill Jacket for ch. 579 (1924), at 12.

To that end, Article 12-A sets forth requirements for obtaining and renewing a broker or salesperson license.[2] Prospective real estate brokers must prove their competency by (among other things) attending and completing at least 152 hours of real estate courses approved by DOS; demonstrating "a fair understanding of the general purposes and general legal effect of deeds, mortgages, land contracts of sale, and leases"; and showing an understanding of "the laws, rules and regulations pertaining to fair housing and discrimination in the sale or rental of real property." RPL § 441(1)(b). In addition, prospective licensees must meet minimum age require-ments and may not be convicted of certain offenses which the Secretary of State determines is contrary to the public interest in conformity with Article 23-A of the

---

[2] A real estate salesperson, sometimes referred to as a real estate agent, works under the authority of a licensed broker to assist in buying, selling, and renting properties. *See* RPL § 440(3).

3

Correction Law. *Id.* § 440-a. DOS may revoke or suspend a real estate license based on a violation of any provision under Article 12-A, or on any other conduct that "demonstrate[s] untrustworthiness or incompetency." *Id.* § 441-c(1)(a).

Article 12-A also establishes a "state real estate board" empowered to promulgate rules and regulations to "effectuate the purposes of" the law, such as rules about broker licensing education and examinations. *Id.* §§ 442-i, 442-k. The board allows licensees, who comprise at least five of its thirteen members, "to participate in the regulatory process for real estate license laws." Introducer's Mem. in Supp. for S. 3873-B (n.d.), *in* Bill Jacket for ch. 248 (1995), at 6.

In the interest of transparency and trustworthiness, Article 12-A requires real estate brokers to disclose in writing whose interests they represent in a transaction and the duties they owe as a result. RPL § 443. Case law at the time when § 443 was enacted allowed brokers to represent both a landlord and a prospective tenant in the same transaction—an arrangement known as "dual agency"—as long as the dual representation was disclosed to both parties. But the case law did not specify the content, form, or timing of disclosure. Section 443 filled in those details by providing that a broker who acts as a dual agent must first obtain informed consent to do so from both sides in writing. RPL § 443; *see* Budget Report on Bills for S. 5684-A (July 18, 1991), *in* Bill Jacket for ch. 726 (1991), at 12-13. The broker "should also explain the possible effects of dual representation, including that by consenting to the dual agency relationship the landlord and tenant are giving up their right to undivided loyalty." RPL § 443(4)(b). This disclosure requirement seeks to avoid "confusion on

4

the part of buyers and sellers as to the loyalties and duties of agents with whom they are dealing." Letter from J. Tallon, Jr. to Hon. E. Moore (July 16, 1991), *in* Bill Jacket for ch. 726 (1991), at 16. Those loyalties and duties are defined by common-law principles of agency, which the statute does not "limit or alter." RPL § 443(6); *see* Letter from D. Adams to Hon. E. Moore (July 1991), *in* Bill Jacket for ch. 726, *supra*, at 50 (New York State Association of Realtors, Inc. (NYSAR), a plaintiff in the current lawsuit, stating that the provision "avoid[s] subsequent questions as to whether there was legislative intent to somehow alter the common law"); *id.* at 22 (letter from DOS underscoring that the law requires real estate licensees to disclose "common law fiduciary duties"). Section 443 does not allow or prohibit dual agency beyond the preexisting "common law strictures." *Id.* And it does not determine how dual agents are compensated, which is the focus of the FARE Act.

In all, Article 12-A does not address who must pay broker fees, create an entitlement to broker compensation, or impose any cap on broker fees. Although the statute contains some provisions related to broker compensation, those provisions serve a different purpose, i.e., to help ensure that unlicensed brokers are not unlawfully providing real estate brokerage services. For example, licensed real estate brokers generally cannot split their fees or commissions with unlicensed brokers or salespeople. RPL § 442(1). A person suing for compensation related to a real estate transaction must establish that the person "was a duly licensed real estate broker or real estate salesperson" when the cause of action arose. *Id.* § 442-d. And real estate salespeople, who are subject to licensing requirements different from those of brokers,

cannot receive compensation for providing services such as "appraising, buying, selling, exchanging, leasing, [or] renting" real estate, except from a licensed real estate broker with whom the salesperson works. *Id.* § 442-a.

Similarly, DOS regulations issued under Article 12-A do not dictate whether or when real estate brokers earn or collect fees from tenants rather than landlords. Instead, the regulations focus on licensed real estate brokers' competency, ethics, and transparency. For example, DOS regulations build on RPL § 443 by requiring that a broker "make it clear for which party he is acting" and "not receive compensation from more than one party except with the full knowledge and consent of the broker's client." 19 N.Y.C.R.R. § 175.7. The purpose of the regulation is "[t]o provide clarity regarding brokers obligations *when receiving compensation*," 39 N.Y. Reg. 79, 79 (Sept. 28, 2016) (emphasis added), not to create an entitlement to broker compensation in the first instance. DOS regulations on advertising require that brokers (among other things) obtain authorization from the landlord before advertising a property, identify the licensed real estate broker associated with the listing, and describe the property accurately. 19 N.Y.C.R.R. § 175.25. And citing Article 12-A's goal "to ensure that real estate licensees deal honestly and fairly with members of the public," the advertising regulations require that advertisements not be false or misleading. *See* 43 N.Y. Reg. 17, 18 (Oct. 24, 2012).

**B.**     **The FARE Act and This Lawsuit**

In December 2024, the New York City Council enacted the FARE Act to prevent real estate brokers from passing their fees onto tenants when the broker is representing the landlord's interests in renting out an apartment. *See* Compl. ¶ 70 (Dec. 16, 2024), ECF No. 1; Defs.' Mem. of Law in Supp. of Mot. to Dismiss Compl. and in Opp'n to Prelim. Injunction ("MTD Br.") at 1-2 (Feb. 28, 2025), ECF No. 37. Under the FARE Act, "a landlord's agent" cannot charge fees to a tenant related to the rental of residential real property. Admin. Code of City of N.Y. § 20-699.21(a)(1). In addition, "any agent" who publishes a rental listing with the permission or authorization of the landlord cannot charge fees to the tenant for the listed property. *Id.* § 20-699.21(a)(2). The FARE Act presumes that an agent who publishes a rental listing does so with the permission or authorization of the property's landlord, *id.* § 20-699.21(e), as DOS regulations require. Other provisions of the FARE Act prohibit conditioning the rental of residential real property on the tenant engaging an agent, *id.* § 20-699.21(c), and ban listings for the rental of residential real property that include such impermissible fees, *id.* § 20-699.21(d). Violations of the law are punishable by civil penalties of up to $2,000 per violation. *Id.* § 20-699.23(a). The FARE Act will go into effect in June 2025. Compl. ¶ 77; MTD Br. at 1.

Within days of the FARE Act's passage, plaintiffs filed this lawsuit seeking to enjoin enforcement of the law. *See* Compl. ¶¶ 69, 157. As relevant to the State's interests here, plaintiffs' second cause of action asserts that the FARE Act is preempted by state law. *Id.* ¶ 160. Specifically, plaintiffs allege that Article 12-A and

attendant DOS regulations create a "detailed regulatory scheme that evinces the State's intent to occupy the field with respect to the law governing real-estate transactions and real-estate brokers."[3] *Id.* ¶ 161. Elsewhere, plaintiffs also describe the allegedly preempted field as "the field of broker regulation" (Pls.' Mem. of Law in Supp. of Mot. for Prelim. Injunction ("P.I. Mem.") at 2 (Jan. 13, 2025), ECF No. 20) and "the field of real estate law" (P.I. Mem. at 18).

## ARGUMENT

### THE FARE ACT IS NOT FIELD-PREEMPTED BY STATE LAW

Article 12-A and attendant state regulations (P.I. Mem. at 16-19; Compl. ¶¶ 7, 60-65) do not evince any legislative intent to preempt the field of all regulation of real estate brokers or transactions. New York courts have repeatedly held that Article 12-A does not preempt local efforts to regulate aspects of real estate transactions. *See Arash Real Est. & Mgmt. Co. v. New York City Dep't of Consumer Affs.*, 148 A.D.3d 1137, 1139-40 (2d Dep't 2017); *DiFrancesco v. County of Rockland*, 41 A.D.3d 530, 531 (2d Dep't 2007). The state law provisions at issue here create a statewide licensing regime that primarily regulates *who* may engage in real estate brokerage services. They do not contain comprehensive and detailed provisions about the

---

[3] Though plaintiffs state that the FARE Act "conflicts with" state statutes and regulations, Complaint (Compl.) ¶ 7, the complaint fails to specify any provision of Article 12-A that the FARE Act actually conflicts with. And plaintiffs' preliminary injunction motion raises only field preemption arguments. *See* Pls.' Mem. of Law in Supp. of Mot. for Prelim. Injunction ("P.I. Mem.") at 16 n.10 (Jan. 13, 2025), ECF No. 20. Accordingly, amici will not address conflict preemption here.

collection of broker fees from prospective tenants, as would be required for field preemption. The FARE Act, on the other hand, primarily regulates those specific fees without impinging on the statewide licensing standards that brokers must satisfy. State and city law, therefore, each occupies "an independent realm of governance." *See DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 97 (2001). Even if the two regimes in some respects overlap, the impact of the local law is tangential to the State's overriding concerns about real estate licensure. As a result, plaintiffs' arguments about field preemption should be rejected.

### A.    Article 12-A and Attendant State Regulations Do Not Evince an Intent to Occupy the Field of Broker Fee Regulation.

A local law will give way to state law "where there is a direct conflict with a state statute (conflict preemption) or where the legislature has indicated its intent to occupy the particular field (field preemption)." *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018). To evaluate a field preemption claim, courts consider whether state law (i) enacts a comprehensive and detailed regulatory scheme in the field that the local law seeks to regulate; (ii) contains statements of legislative policy conveying the requisite intent; (iii) reflects the need for statewide uniformity in the regulated field; and (iv) imposes controls at the local level. *See, e.g.*, *Jancyn Mfg. Corp. v. County of Suffolk.*, 71 N.Y.2d 91, 99 (1987); *Garcia*, 31 N.Y.3d at 618.

Each of the relevant factors weighs against plaintiffs' field preemption claim here. *First*, Article 12-A does not occupy the field with respect to fees that real estate brokers can or cannot charge prospective tenants. Instead, Article 12-A establishes a

licensing regime to ensure that real estate brokers and salespeople meet "standards of competency, honesty and professionalism." *2 Park Ave. Assocs. v. Cross & Brown Co.*, 36 N.Y.2d 286, 289 (1975). To earn and maintain their licenses, brokers and salespeople must undergo training and demonstrate sufficient knowledge in various issues pertaining to real estate transactions. *See* RPL §§ 440-a, 441. And licenses can be revoked if the broker or salesperson exhibits untrustworthy or incompetent conduct, such as by violating a provision of Article 12-A. *Id.* § 441-c(1)(a).

Plaintiffs err in pointing to provisions of Article 12-A that relate to licensed brokers' compensation. *See* P.I. Mem. at 17-19. These provisions regulate who may collect or share in fees (namely, licensed brokers or salespersons), and do not regulate what fees licensed brokers may collect specifically from tenants. Instead, by making licensure a precondition to earning compensation, these provisions ensure that the licensing regime cannot be easily circumvented by unlicensed individuals earning money for providing real estate brokerage services. For example, licensed real estate brokers generally cannot split their fees or commissions with unlicensed brokers or salespeople. RPL § 442(1). That way, unlicensed brokers cannot avoid the licensing requirements by "using the name of a qualified broker and then demanding a part of the commissions earned." *J.L. Holding Co. v. Reis*, 240 N.Y. 424, 427 (1925). In the same vein, a person suing to recover an allegedly unpaid real estate commission must establish that they were "a duly licensed real estate broker or real estate salesperson" when the cause of action arose. RPL § 442-d. And real estate salespeople, who are subject to licensing requirements different from those of brokers, cannot receive

compensation for providing brokerage-like services except from a licensed broker with whom the salesperson works. *Id.* § 442-a.

Plaintiffs' reliance on other parts of Article 12-A is also misplaced. Plaintiffs offer no evidence that the state real estate board, established to give licensees a voice in "real estate license laws," Introducer's Mem. in Supp. for S. 3873-B, *in* Bill Jacket for ch. 248, *supra*, at 6, is intended to regulate the fees that brokers can impose on prospective tenants. *See* Compl. ¶¶ 7, 59; P.I. Mem. at 17; *see also* RPL § 442-k. And even if the board were empowered to do so, plaintiffs do not allege that such authority would be exclusive. *See Jancyn Mfg. Corp.*, 71 N.Y.2d at 99. Plaintiffs also allude to Article 12-A's ban on "after-the-fact referral fees." P.I. Mem. at 17; *see* RPL § 442-*l*. But as NYSAR, one of the plaintiffs here, explained in supporting § 442-*l*, this provision addresses "demands to real estate brokers from relocation companies" for unearned commissions. Letter from D. MacKenzie, NYSAR Director of Gov't Affs., to J. McGuire, Counsel to Governor (June 27, 2002), *in* Bill Jacket for ch. 482 (2002), at 16. This provision in no way concerns broker fees charged to prospective tenants.

The DOS regulations on which plaintiffs rely (P.I. Mem. at 18) also do not support plaintiffs' field preemption argument. None of these regulations concern whether or when a licensed broker can charge fees to prospective tenants, or who must pay a broker deemed to be acting in the landlord's interest. Instead, the DOS regulations further Article 12-A's focus on real estate brokers' competency, ethics, and transparency. For example, the advertising regulation ensures that real estate listings are "honest," "accurate," and tied to a licensed broker or salesperson. 19

11

N.Y.C.R.R. § 175.25. And the regulation on disclosure mandates that licensed brokers "make it clear" for whom they are acting, and not receive compensation from multiple parties to a transaction without "full knowledge and consent" of the client.[4] *Id.* § 175.7. Like RPL § 443, the current regulations do not regulate when dual agency is allowed or prohibited or even advisable; they simply require full disclosure of dual representation when it occurs.

In contrast to state-law regimes that "cover[ ] nearly every aspect of" the fields they preempt, *Ba Mar, Inc. v. County of Rockland*, 164 A.D.2d 605, 613 (2d Dep't 1991), Article 12-A says nothing about numerous issues that broker fees entail. For example, the statute does not prescribe an express cap on broker fees, or even define what "broker fee" means for purposes of regulation. *Compare Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 378 (1989) (describing "elaborate" state law on roadway improvements that preempted local law)*, with New York State Club Ass'n v. City of New York*, 69 N.Y.2d 211, 219 (1987) (noting that state law "contains no legislative definition" of allegedly preempted issue), *aff'd*, 487 U.S. 1 (1988). While a "comprehensive and detailed regulatory scheme in a particular area" might suggest field preemption of that area, *New York State Club Ass'n,* 69 N.Y.2d at 217, Article 12-A's silence on so many fee-related matters suggests the opposite.

*Second*, while field preemption may in some circumstances be implied by "the need for [s]tate-wide uniformity in a given area," *see Garcia*, 31 N.Y.3d at 618; *Doe v.*

---

[4] The regulation about "net listings" applies to property sales, not rentals, and so appears irrelevant to the FARE Act. *See* 19 N.Y.C.R.R. § 175.19.

*Black*, No. 23-cv-6418 (JGLC), 2024 WL 4335453, at *4 (S.D.N.Y. Sept. 27, 2024) (same), there is no such support for field preemption here because rules about broker fees do not necessarily require statewide uniformity. The FARE Act seeks to combat a problem specific to the rental housing market in New York City, where, unlike in almost every other American city, landlords routinely pass the fees charged by brokers who are representing the landlords' interests onto tenants. *See* Decl. of Claude G. Szyfer, Ex. C, New York City Council Comm. Report of the Governmental Affs. Div. on Proposed Int. No. 360-A at 6 (Nov. 13, 2024), ECF No. 21-9. The New York City real estate market is also meaningfully different from real estate markets in the rest of the State due to generally higher rents and lower vacancy rates. A broker-fee rule tailored to "New York City's uniquely complex market" (P.I. Mem. at 4) may not work in, say, Rochester, and vice versa. For their part, plaintiffs make no argument about why broker fees would require statewide uniformity, instead acknowledging the "city-wide predicament" (Compl. ¶ 1) that the FARE Act intends to solve.[5] While the Legislature could choose to enact across-the-board statutory provisions about real estate broker fees in the future, current state law does not evince any legislative intent to preclude local governments from crafting their own regulations on that issue.

Plaintiffs fail to cite any other evidence of legislative intent at the state level to occupy the field of broker fees, so the remaining two factors relevant to field

---

[5] By contrast, general statewide uniformity in broker licensing standards serves the statewide interest of ensuring that real estate brokers across the State meet certain basic standards of competency, honesty, and professionalism.

13

preemption also cut against them. Unlike in cases where state law has been found to occupy a given field of regulation, plaintiffs point to no statement by the Legislature or state officials that Article 12-A intends "to fully control the issue" of broker fees. *Black*, 2024 WL 4335453, at \*4; *see Consolidated Edison Co. of N.Y. v. Town of Red Hook*, 60 N.Y.2d 99, 105-06 (1983) (citing statements by the Legislature and Governor in finding preemption); *People v. De Jesus*, 54 N.Y.2d 465, 470 (1981) (citing statements by the Legislature, Attorney General, and Comptroller in finding preemption).[6] And plaintiffs cannot overcome this absence by relying on statements by *a City* official, Ahmed Tigani, opining about state law. *See* P.I. Mem. at 18-19; Compl. ¶¶ 7, 66-67; MTD Br. at 20-21. In addition, plaintiffs make no argument that Article 12-A imposes local mechanisms that would control broker fees—further evidence that current state law does not intend to preclude local regulations in this area. *See Jancyn Mfg. Corp.*, 71 N.Y.2d at 99.

Where the Legislature intended to signal an intent to preempt in Article 12-A, it did so explicitly. Section 443-a, which addresses the disclosure of certain sensitive facts in a property transaction, states that it "shall preempt any local law inconsistent with" its provisions. RPL § 443-a(4); *see* Dan M. Blumenthal, Practice Commentaries to RPL § 443-a, McKinney's Cons. Laws of N.Y. (2015) (Westlaw). As this language demonstrates, the Legislature that enacted Article 12-A knew how to expressly

---

[6] *See also New York State Ass'n for Affordable Hous. v. Council of New York*, 141 A.D.3d 208, 214 (1st Dep't 2016) (finding that bill jackets for state law showed "no indication, either express or implied, of any intent on the part of the legislature to preempt the entire field of affordable housing").

preempt local laws. The targeted preemption provision in section 443-a strongly suggests that the Legislature did not intend the statute as a whole to field preempt all local laws governing real estate brokers and transactions. *See People v. Finnegan*, 85 N.Y.2d 53, 58 (1995) ("We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).

　　None of the cases on which plaintiffs rely support their field preemption claim. *See* P.I. Mem. at 15-17. Plaintiffs fail to cite any case where a court found that Article 12-A preempted local regulation. In fact, most of the cited cases rejected field preemption claims. *Arash Real Est. & Mgmt. Co.*, 148 A.D.3d at 1139-40; *Jancyn Mfg. Corp.*, 71 N.Y.2d at 98; *DJL Rest. Corp.*, 96 N.Y.2d at 96-97; *Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992); *Eric M. Berman, P.C. v. City of New York*, 25 N.Y.3d 684, 692 (2015). And the cases that found field preemption are readily distinguishable. In *Chwick v. Mulvey*, for example, a local handgun ordinance interfered with the State's gun-licensing regime because it restricted what state law exclusively provided—the right to possess certain firearms. 81 A.D.3d 161, 166-67 (2d Dep't 2010). By contrast, the state law at issue here does not provide a right, such as a right to collect broker fees from tenants, that the FARE Act impermissibly undercuts. And in *Ba Mar, Inc.*

15

*v. County of Rockland*, the court discerned the Legislature's intent to preempt the field of mobile home parks in "the entire legislative history surrounding" state law. 164 A.D.2d at 613. Article 12-A's legislative history does not reflect any legislative intent to preempt the entire field of regulation about real estate brokers or transactions.

Plaintiffs err in arguing that Article 12-A "comprehensively addresses" the law of principal-agent relationships in the rental market—that is, relationships between a landlord or tenant (as the principal) and their broker (as the agent). Compl. ¶¶ 61-63; *see* P.I. Mem. at 18. From that premise, plaintiffs contend that Article 12-A precludes the FARE Act from regulating what those principal-agent relationships entail. But plaintiffs' argument misconstrues the scope of Article 12-A. Far from comprehensively regulating agency relationships, Article 12-A expressly *disclaims* making any change to the common law principles that govern agency relationships. *See* RPL § 443(6); *Rivkin v. Century 21 Teran Realty LLC*, 10 N.Y.3d 344, 354 (2008); *see also In re Wilson Sullivan Co.*, 289 N.Y. 110, 115 (1942) (holding that Article 12-A did not displace "the recognized common law relationship" between broker and salesperson). And it does not purport to create fiduciary relationships where none otherwise would exist under common law. *See* RPL § 443(1)(a) (defining "agent" as licensed brokers and salespeople "acting in a fiduciary capacity"). Moreover, the statute's legislative history confirms that it evinces no "legislative intent to somehow alter the common law." Letter from D. Adams to Hon. E. Moore (July 1991), *in* Bill Jacket for ch. 726, *supra*, at 50; *id.* at 22 (underscoring that the law requires real

estate licensees to disclose "common law fiduciary duties"). Against this common-law backdrop, Article 12-A focuses on the content, form, and timing of disclosing agency relationships to clients.

Because Article 12-A does not comprehensively address principal-agent relationships among landlords, tenants, and brokers, the FARE Act can regulate in this area. The FARE Act can, for example, define the circumstances in which a broker acts in the landlord's interests, *see* Admin. Code of City of N.Y. §§ 20-699.20, 20-699.21(a), and prohibit collecting fees from tenants in such circumstances, *see id.* § 20-699.21(a). These regulations do not intrude on a field preempted by Article 12-A.

## B.    Even If State Law and the FARE Act Touched on Some of the Same Issues, That Would Be Insufficient to Establish Field Preemption.

Even if state law in some respects overlapped with the FARE Act, that would not be enough to establish field preemption when application of the factors discussed demonstrate that Article 12-A does not preempt the field of real estate brokers or transactions. As plaintiffs concede, "the mere fact 'that the State and local laws touch upon the same area is insufficient to support a determination that the State law has preempted the entire field of regulation in a given area.'" P.I. Mem. at 15-16 (quoting *Jancyn Mfg. Corp.*, 71 N.Y.2d at 99). Applying this well-established principle, New York courts have rejected arguments that Article 12-A preempts local efforts to regulate aspects of real estate transactions, even where the local law touches on matters within the scope of Article 12-A. In *Arash Real Estate and Management Co. v. New York City Department of Consumer Affairs*, for example, the court held that a

17

New York City law requiring disclosures to prospective tenants in rental transactions was not field preempted by Article 12-A. 148 A.D.3d at 1139-40. And in *DiFrancesco v. County of Rockland*, the court held that a Rockland County law requiring brokers to inform customers about water-quality standards also was not field preempted by Article 12-A. 41 A.D.3d at 531. Both cases underscored that Article 12-A is primarily concerned with broker licensing, not with occupying "the entire field" of broker activity. *See id.*; *Arash Real Est. & Mgmt. Co.*, 148 A.D.3d at 1139.

Far from occupying "the field of broker regulation" (P.I. Mem. at 2), Article 12-A operates alongside various local laws that regulate broker practices. In New York City, for example, local civil rights laws restrict how real estate brokers can discuss the racial, religious, or ethnic makeup of a neighborhood. *See* Admin. Code of City of N.Y. § 8-203 (enumerating "[u]nlawful real estate practices"). To preserve a neighborhood's existing makeup, the City can designate it a "non-solicitation" area, where brokers are barred from soliciting the sale, purchase, or rental of any residential property. *Id.* §§ 8-204, 8-205. And the City's Human Rights Law prohibits brokers and salespeople from engaging in a range of discriminatory practices, such as refusing to rent an apartment on the basis of protected characteristics. *Id.* § 8-107(5)(c). These concurrent regulations of real estate broker activity contravene plaintiffs' contention that Article 12-A wholly occupies the field of "real-estate transactions and real-estate brokers." Compl. ¶ 161; P.I. Mem. at 16-17; *see DJL Rest. Corp.*, 96 N.Y.2d at 97 (finding local zoning regulations not preempted by state law where "plaintiffs come under both regulatory schemes").

18

Plaintiffs' remaining preemption arguments fail. At most, they identify isolated instances of overlap between state and local law, which is insufficient to show field preemption. Both state law and the FARE Act touch on real estate advertising, for example, but in different ways and to different ends. *See, e.g.*, *Hertz Corp.*, 80 N.Y.2d at 569 (finding no field preemption where city law regulated car rental fees and state law regulated car rentals more broadly); *International Franchise Ass'n v. City of New York*, 193 A.D.3d 545, 547-48 (1st Dep't 2021) (finding no field preemption where state and city law had different goals in regulating worker wages). DOS regulates the content of real estate advertising to police accuracy and professionalism. *See* 19 N.Y.C.R.R. § 175.25. The FARE Act presumes that a broker who advertises an apartment does so in compliance with state law, *see* Admin. Code of City of N.Y. § 20-699.21(e), and on that basis regulates the payment of broker fees as between landlords and tenants, *id.* § 20-699.21(a)(2)—an issue on which Article 12-A is silent. The FARE Act does not inhibit DOS's advertising regulations or frustrate the State's purpose in enacting those regulations. The FARE Act thus has no more than a tangential impact on Article 12-A's overriding interests in maintaining broker licensing standards. *See DJL Rest. Corp.*, 96 N.Y.2d at 97.

## CONCLUSION

This Court should dismiss plaintiffs' preemption claim.

Dated:    New York, New York
          March 28, 2025

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        Attorney for Amici Curiae


                                        By:  /s/ *Kartik Naram*
                                             _____
                                             KARTIK NARAM
                                             Assistant Solicitor General

                                             28 Liberty Street
                                             New York, NY 10005
                                             (212) 416-6347
BARBARA D. UNDERWOOD                         kartik.naram@ag.ny.gov
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
KARTIK NARAM
  *Assistant Solicitor General*
      *of Counsel*

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I have served the foregoing Motion on all registered parties through the Court's electronic case filing (CM/ECF) system.


/s/ *Judith N. Vale*
Judith N. Vale