Index No. 24-CV-09678 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REAL ESTATE BOARD OF NEW YORK,
INC., NEW YORK STATE
ASSOCIATION OF REALTORS, INC.,
BOHEMIA REALTY GROUP, BOND
NEW YORK REAL ESTATE CORP.,
REAL NEW YORK LLC, LEVEL GROUP
INC., FOUR CORNERS REALTY, LLC,
21 WEST 74 CORP., 8 WEST 119TH
STREET HDFC,

                                                              Plaintiffs,

-against-

THE CITY OF NEW YORK, *a municipal entity*, VILDA VERA MAYUGA, *as Commissioner of New York City Department of Consumer and Worker Protection*,

                                                              Defendants.

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

---

            ***HON. MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
      *Attorney for Defendants*
      *100 Church Street, Room 5-143*
      *New York, N.Y.  10007*

      *Of Counsel:  Aimee Lulich & Jessica Katzen*
      *Tel:  (212) 356-2369*
      *Matter #:  2024-103651*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... II

ARGUMENT .............................................................................................................................. 1

    A.   Plaintiffs cannot amend the complaint in opposition ..................................... 1

    B.   The FARE Act addresses a substantial and compelling government interest .................................................................................... 1

    C.   Plaintiffs fail to state a First Amendment claim ............................................ 2

        1.   The FARE Act does not implicate the First Amendment ................................................................................... 2

        2.   The challenged provision withstands scrutiny ................................... 4

    D.   The FARE Act is not preempted by state law ................................................ 6

    E.   Plaintiffs cannot maintain a claim under the Contract Clause ................................................................................................................. 6

CONCLUSION........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Pages**

*Airbnb, Inc. v. City of Boston*,
   386 F. Supp. 3d 113 (D. Mass. 2019) ...................................................................................4

*Allied Structural Steel Co. v. Spannaus*,
   438 U.S. 234 (1978)................................................................................................................8

*Bldg. & Realty Inst. of Westchester & Putnam Counties, Inc. v. New York*,
   2024 U.S. App. LEXIS 5905
   (2d Cir. 2024)..........................................................................................................................7

*Brown v. Hartlage*,
   456 U.S. 45 (1982)..................................................................................................................3

*City of Dallas v. Stanglin*,
   490 U.S. 19 (1989)..................................................................................................................3

*City of Lakewood v. Plain Dealer Pub. Co.*,
   486 U.S. 750 (1988)................................................................................................................4

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)....................................................................................................1

*Fabri v. United Techs. Int'l, Inc.*,
   387 F.3d 109 (2d Cir. 2004)....................................................................................................7

*Foresalebyowner.com v. Zinnemann*,
   347 F. Supp. 2d 868 (E.D. Cal. 2004).....................................................................................4

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949)................................................................................................................3

*HomeAway.com v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2018) ...................................................................................................3

*Kinney v. Connecticut Judicial Dep't*,
   974 F.2d 313 (2d Cir. 1992)....................................................................................................7

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
   22-cv-1138, 2022 U.S. Dist. LEXIS 233796
   (S.D.N.Y. Dec. 30, 2022).........................................................................................................1

*Melendez v. City of New York*,
   16 F.4th 992 (2d Cir. 2021) ..........................................................................................7, 9, 10

**Cases**                                                                                                       **Pages**

*Moon Rocket v. City of New York*,
   24-cv-4519, 2025 U.S. Dist. LEXIS 52883
   (S.D.N.Y. Mar. 21, 2025) ...................................................................................................1

*Principle Homecare, LLC v. McDonald*,
   No. 24-CV-7071 (MMG), 2025 U.S. Dist. LEXIS 34854
   (S.D.N.Y. Feb. 26, 2025) ...................................................................................................9

*Sanitation & Recycling Indus., Inc. v. City of New York*,
   107 F.3d 985 (2d Cir. 1997) ..........................................................................................8, 9

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ..........................................................................................................4

*Sullivan v. Nassau County*,
   959 F.3d 54 (2d Cir. 2020) ...............................................................................................8

*Sveen v. Melin*,
   138 S. Ct. 1815 (2018) .....................................................................................................7

*Veterans Guardian VA Claim Consulting LLC v. Platkin*,
   24-1097, 2025 U.S. App. LEXIS 7500
   (3d Cir. 2025) ...................................................................................................................3

*Vugo, Inc. v. City of New York*,
   931 F.3d 42 (2019) ...........................................................................................................4

**Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1

N.Y.C. Admin. Code § 20-699.21(a)(1) ..................................................................................2

N.Y.C. Admin. Code § 20-699.21(a)(2) ....................................................................2, 3, 4, 5

**Other Authorities**

Individual Rules of Practice § 4(C) .........................................................................................1

Defendants City of New York ("City") and New York City Department of Consumer and Worker Protection Commissioner Vilda Vera Mayuga in her official capacity, by their attorney Muriel Goode-Trufant, Corporation Counsel of the City of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

### A. Plaintiffs cannot amend the complaint in an opposition

Plaintiffs impermissibly attempt to make new factual allegations by annexing copies of contracts as Exhibit ("Pl. Ex.") A and a declaration by a non-party individual as Pl. Ex. B, and to raise a conflict preemption claim in their opposition brief ("Pl. Mem"). "It is bedrock civil procedure that '[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint,' as well as documents that are 'integral to the complaint.'" *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 22-cv-1138, 2022 U.S. Dist. LEXIS 233796, at *10 (S.D.N.Y. Dec. 30, 2022) (*quoting DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Plaintiffs cannot amend their Complaint through a declaration or their brief. *See Moon Rocket v. City of N.Y.*, 24-cv-4519, 2025 U.S. Dist. LEXIS 52883, at *7 n. 3 (S.D.N.Y. March 21, 2025). Finally, plaintiffs failed to follow this Court's Individual Rules of Practice in Civil Cases § 4(C) to amend their Complaint, and, thus, the Court should not consider Pl. Exs. A and B or the alleged conflict preemption claim.

### B. The FARE Act addresses a substantial and compelling government interest

The FARE Act is intended to properly align the principal-agent relationship in the rental market by prohibiting the practice of tenants being forced to pay fees to brokers retained by the landlord, a consumer protection measure in a market in which tenants have little negotiating power.

Ex. F.[1] Plaintiffs misleadingly argue that the Act's goal has changed from affordability to the principal-agent relationship to household mobility as if there can be only one goal motivating a law. Pl. Mem. at 13, 22. However, the record is clear that defendants' government interests have been consistent since the bill was introduced—correcting a market failure in the City where tenants are often forced to pay a fee for a broker who was retained by the landlord in contravention of usual principal-agent relationships. *See* Exs. A-H. Because brokers' fees represent a significant upfront cost for tenants, they impede mobility, contribute to low housing vacancy rates, and potentially trap households in apartments that no longer meet their needs. Ex. F. On the other hand, landlords, who were most able to assess the value of broker's services could pass these fees on to tenants, and, thus, had no incentive to negotiate the amount of the fees. *Id.* The FARE Act addresses the significant and compelling government interests of ensuring adequate and affordable housing for its residents and protecting consumers from unfair practices.

**C.    Plaintiffs fail to state a First Amendment claim**

### 1.  The FARE Act does not implicate the First Amendment

Plaintiffs fail to establish any impact of the FARE Act on activity protected the First Amendment. Their opposition papers narrow their First Amendment challenge to only § 20-699.21(a)(2).[2] Confusingly, plaintiffs concede that the nearly identical § 20-699.21(a)(1) regulates conduct, not speech. Like subsection (a)(1), subsection (a)(2) regulates conduct, by prohibiting a transaction between the broker and tenant where the broker was retained by the landlord (evidenced by the broker's publishing a listing with the landlord's authority). Contrary to

---

[1] The exhibits referenced herein are annexed to the Declaration of Aimee K. Lulich filed with defendants' moving papers.
[2] Section 20-699.21(a)(2) provides that "any agent who publishes a listing for a rental of residential real property with the permission or authorization of the landlord for such property shall not impose any fee on, or collect any fee from, a tenant related to the rental of such property."

2

plaintiffs' assertions, Pl. Mem. at 8, subsection (a)(2) bans certain commercial transactions, and does not impose any liability for publishing a listing.

Thus, § 20-699.21(a)(2)'s impact on speech, if any, is merely incidental. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Plaintiffs' arguments to the contrary are facially absurd. Plaintiffs imply, without support, that if a law renders certain commercial speech less profitable, it triggers the First Amendment and that § 20-699.21(a)(2) "destroy[s] the economic motive behind commercial speech." Pl. Mem. at 3. However, § 20-699.21(a)(2) does not render brokers' open listings unprofitable—brokers who are authorized by landlords to post open listings may still collect a fee from landlords, and the FARE Act does not limit the amount of brokers' fees, demand for apartments, or need to fill vacant apartments. Nor were brokers being paid to publish open listings; rather, open listings are a means to an end—finding tenant for vacant apartments.

It is a well-established principle that the First Amendment is not violated any time a law regulates conduct just because that conduct is in part carried out by means of language. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *Brown v. Hartlage*, 456 U.S. 45, 55 (1982). Unlike in *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 24-1097, 2025 U.S. App. LEXIS 7500, at *8 (3d Cir. 2025), where the challenged law prohibited agents from charging for *any* services before the rendering of an initial benefits decision, § 20-699.21(a)(2) does not "ban charging for speech." Unlike the agents in *Platkin*, speech is not "the core" of what brokers do. *Id.* at *11. Plaintiffs describe the work of brokers and salespersons as "engag[ing] in rental transactions," Compl. ¶ 14, and real estate transactions do not constitute speech or inherently expressive conduct (nor do plaintiffs allege as such). *See, e.g.*, *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 865 (9th Cir. 2018) (ordinance regulating companies that hosted online platforms for short-term rentals "is plainly a housing and rental regulation" and the conduct at

3

issue "consists of only nonspeech, nonexpressive conduct"); *Airbnb, Inc. v. City of Boston*, 386 F.Supp.3d 113, 123 (D. Mass. 2019) (same); *Foresalebyowner.com v. Zinnemann*, 347 F.Supp.2d 868, 874 (E.D. Cal. 2004) (real estate licensing requirements "simply do not target patently expressive or communicative conduct").

Finally, as discussed in defendants' opening brief ("Def. Mem."), the FARE Act does not curtail speech, and it is speculative that open listings will decline. *See* Def. Mem. at 12–13. Plaintiffs have not, and cannot, refute that landlords will still need to find tenants, and there is no dearth of open listings for the 50 percent of City rentals listed as "no fee." As the FARE Act regulates non-expressive conduct and does not threaten to chill commercial speech, it does not implicate the First Amendment.

**2. The challenged provision withstands scrutiny**

Pl. Mem. does not plausibly refute that the FARE Act is a "law[] of general application that [is] not aimed at conduct commonly associated with expression" and therefore plaintiffs cannot state a facial challenge to § 20-699.21(a)(2). *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 760–61(1988). Even if plaintiffs could establish a facial challenge, they concede any speech impaired by the FARE Act is commercial speech, and, thus, it would not be subject to strict scrutiny. Post-*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), "the *Central Hudson* test still applies to commercial speech restrictions." *Vugo, Inc. v. City of New York*, 931 F.3d 42, 49 (2019) (applying *Central Hudson* to prohibition on advertising in for-hire vehicles).

Section 20-699.21(a)(2) in no way regulates the content of real estate listings, and therefore, cannot be construed as content-based or viewpoint discrimination. Plaintiffs' contention that they can "avoid . . . the effects of the Act by altering their speech" is disingenuous and untrue because it is conduct, not speech, that is being regulated. Pl. Mem. at 7. Of course a broker could publish "something other than a listing," such as an op-ed about the rental market, because it is not

4

related to the conduct regulated by the FARE Act. Nor is the FARE Act motivated by animus toward brokers or the elimination of broker services. *See* Def. Mem. at 14. Instead, § 20-699.21(a)(2) imposes liability on brokers because brokers are the ones engaging in the conduct that is prohibited by the FARE Act—collecting fees from tenants despite being retained by landlords.

Notwithstanding, even under strict scrutiny analysis, § 20-699.21(a)(2) survives. As described in Section B, above, the FARE Act addresses a compelling government interest and § 20-699.21(a)(2) clearly reflects this important interest by preventing a loophole where a landlord may retain a broker to publish an open listing but then claim that the broker is not acting as the landlord's agent, frustrating the protections afforded by the FARE Act. Prohibiting all rental transactions from taking place in the absence of fiduciary obligations would not accomplish this goal, Pl. Mem. at 10, because as discussed in Def. Mem. at 12, the FARE Act's prohibitions are triggered by the practice of brokers being retained by a landlord, not the existence of a fiduciary relationship.

Plaintiffs' opposition also fails to refute that § 20-699.21(a)(2) not only directly advances the City's important goals, but is also narrowly tailored. The challenged provision precisely advances the City's interest in shifting a significant upfront cost of moving to the party who retained the broker. Plaintiffs' arguments to the contrary fail to raise any inference that § 20-699.21(a)(2) burdens more speech than necessary or, indeed, any speech at all. Pl. Mem. at 10–14.

Plaintiffs continue to rely on faulty policy arguments to supplement their meritless claims. Plaintiffs argue that subsection (a)(2) restricts brokers' ability to serve as dual agents, that the conduct prohibited by this provision can be enforced solely through a tenant's private right of action, and that the Act will not increase "housing mobility." Pl. Mem. at 11–12. However, none

of these arguments support plaintiffs' claim that the FARE Act impermissibly burdens speech. Likewise, a potential increase in rents or loss of profits for some brokers and landlords does not render the FARE Act in violation of the First Amendment or Free Speech Clause.

### D.     The FARE Act is not preempted by state law

Pl. Mem. does not identify a single provision of RPL Article 12-A, or any legislative history, that evidence an intent to occupy the field of broker compensation.  Plaintiffs also do not establish that any other factors that often accompany an intent to occupy a field are present, such as the existence of local controls over broker compensation or a need for uniformity in broker compensation throughout the state.  That Article 12-A defines fiduciary relationships in the real estate field does not imply intent to occupy the field.  In fact, FARE Act adopts definitions of agents from the RPL, and as discussed above, the FARE Act's regulation of brokers' fees is not triggered by a fiduciary relationship.  Plaintiffs seek to distinguish the instant matter from multiple cases where the RPL has been interpreted narrowly, and as primarily establishing a licensing scheme for real estate brokers, but plaintiffs do not cite to a single case where Article 12-A was found to preempt any local law, let alone a local law involving broker compensation.  As such, plaintiffs do state a field preemption claim. *See* Memorandum of Law of State of New York as Amici Curiae.  Finally, for the reasons in Point A, above, plaintiffs cannot now advance a conflict preemption claim that was not brought in the Complaint or by properly amending the Complaint.

### E.     Plaintiffs cannot maintain a claim under the Contract Clause

Plaintiffs entirely misconstrue the protections afforded by the Contract Clause and the legal standards to be applied in determining whether a party has adequately pled such a claim.  The lack of a substantial impairment to an existing contract is fatal to this claim.  Even if some impairment were construed, the law is a reasonable and appropriate means of addressing a significant public purpose, and there is no violation of the Contract Clause.

First, "the Contract Clause prohibits the impairment by the State of *existing* contracts." *Fabri v. United Techs. Int'l, Inc.*, 387 F. 3d 109, 124 (2d Cir. 2004) (emphasis in original) (*citing Kinney v. Connecticut Judicial Dep't*, 974 F.2d 313, 314 (2d Cir. 1992)). "[T]he statute must have been passed after the contract was executed." *Fabri*, 387 F.3d. at 124 (*citing Kinney*, 974 F.2d at 315). The FARE Act was passed on November 13, 2024, meaning that any contract entered into after that date is not protected by the Contract Clause. Even if the Court were to consider Pl Exs. A and B, the contracts *disprove* plaintiffs' allegations that they have "many such" exclusive tenant pay contracts that will be impacted by the FARE Act. Compl., ¶ 32. All but one of the proffered contracts post-date the FARE Act and the lone contract, proffered by plaintiff REAL NY, that pre-dated the FARE Act was executed on November 1, 2024 expiring October 31, 2025. Ex. A. The description of alleged contracts in Ex. B is vague and does not contain start or end dates for the contracts purported to currently exist, and there are insufficient allegations to infer that they will be impacted by the FARE Act. *Bldg. & Realty Inst. of Westchester & Putnam Counties, Inc. v. New York*, 2024 U.S. App. LEXIS 5905, *12-13 (2d Cir. 2024).

Second, even if plaintiffs could identify an existing contract that will be impacted, "not all laws affecting pre-existing contracts violate the Clause." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). Where, as here, the challenged law does not disrupt the reasonable expectations of the contracting parties, undermine the contractual bargain, or prevent the parties from safeguarding or reinstating their rights, there is no substantial impairment. *Id*. at 1822; *Melendez v. City of N.Y.*, 16 F.4th 992, 1033 (2d Cir. 2021). The FARE Act did not disrupt the reasonable expectations of the contracting parties because it was foreseeable. Contrary to plaintiffs' contention, the first version of the FARE Act did not contain a carve-out for existing contracts, and the brokers' testimony regarding the bill demonstrates that they understood the bill covered exclusive listing agreements,

7

Exs. B, D, & G.  Similarly, that the HSTPA was not ultimately successful in prohibiting the passing of landlord's brokers' fees onto tenants does not render the FARE Act "wholly unexpected." Pl. Mem. at 20-22. As described in Def. Mem., there were substantial efforts to curb or prohibit the practice of passing the fees for landlord-retained brokers onto tenants at least as early as 2019.  In addition to HSTPA, New York State Senate Bill S2783,[3] proposed in January of 2023, would prohibit "landlords… from demanding brokers' fees from a tenant" and New York City Council bills Intro. No. 1105-2023,[4] which would have required the party retaining the broker to pay the fee, and Intro No. 1423-2019,[5] capping brokers' fees paid by tenants, put plaintiffs on notice. Thus, REAL NY cannot claim that the law was "wholly unexpected" on November 1, 2024, and thus the law does not constitute an impairment of the November 1, 2024 contract, or any hypothetical contract entered into after at least 2019. *Sullivan v. Nassau Cnty.*, 959 F.3d 54, 64 (2d Cir. 2020); *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).  Further, the six-month grace period afforded prior to implementation of the FARE Act weighs against a finding of substantial impairment.  *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 247 (1978).

Nor does the FARE Act otherwise disrupt the contracting parties' reasonable expectations. "The primary purpose of the Contract Clause was to protect bargained-for economic agreements of private parties against state interference that undermined those rights and responsibilities, particularly where that interference privileges one party over the other or unilaterally releases one party from its obligations without the compensation that contractual rights would otherwise

---

[3] www.nysenate.gov/legislation/bills/2023/S2783 (last visited Apr. 24, 2025).

[4] legistar.council.nyc.gov/LegislationDetail.aspx?ID=6267703&GUID=9F88250A-0A05-4C83-A38F-BD33F3B21D68&Options=ID|Text|&Search=1105  (last visited Apr. 24, 2025).

[5] legistar.council.nyc.gov/LegislationDetail.aspx?ID=3860320&GUID=2C181636-1C9D-463A-AA46-4F45F9F86482&Options=ID|Text|&Search=1423 (last visited Apr. 24, 2025).

provide." *Principle Homecare, LLC v. McDonald*, No. 24-CV-7071 (MMG), 2025 U.S. Dist. LEXIS 34854, *16-17 (SDNY Feb. 26, 2025). As described in Def. Mem., the contracting parties rely upon the future agreement of a third party to pay the brokers' fee, thus, the tenant-pay provision is not enforceable by either party to the contract. The FARE Act does not release either contracting party from an agreement, rather, it directs that an entirely separate person, who has not yet entered into an agreement, cannot be required to pay the brokers' fee. Further, the FARE Act does not burden one contracting party or unilaterally release either party from obligations without compensation. Nor do plaintiffs allege that any contracting party has delivered, or will be required to deliver, on its obligations but will not be compensated. Accordingly, the FARE Act does not substantially impair the proffered contracts.

Even if plaintiffs had identified an existing contract that would be impaired by the FARE Act, any Contract Clause claim would fail because the FARE Act addresses a significant and legitimate public purpose and is a reasonable and appropriate means to do so as described in Point B. The FARE Act remedies important general social and economic problems and is not aimed at benefiting special interests or the City itself. *Sanitation*, 107 F.3d at 993. Indeed, plaintiffs do not seriously contest that the FARE Act addresses a legitimate public concern. Pl. Mem. at 22. Rather, they speculate that it will not achieve the expected results and that it is motivated by hostility towards brokers, propositions that have no support in the record.

Finally, the FARE Act is a reasonable and appropriate means of addressing the significant public purpose. Importantly, because the proffered contracts are private, legislative judgment regarding the means of addressing the public purpose is given deference by the Court. *Melendez*, 16 F.4th at 1032. The record is clear that the FARE Act addresses a specific market imbalance that affects the affordability and accessibility of housing to renters, and it is a reasonable and

appropriate means of doing so. Ex. F. In fact, it specifically targets the practice of requiring tenants to pay fees for brokers hired by landlords, the exact problem it seeks to remedy. Ex. A. The contention that the law is motivated by hostility to brokers fails, because the law simply regulates the conduct of the people who list and fill rental vacancies. And while brokers retained by landlords may not collect their fees from tenants, the Act does not prevent brokers from being paid for services rendered, either by the landlord or through contracting directly with potential tenants. *Id*.

Pl. Mem. at 22-25 attempts to ram a square peg into a round hole in its comparisons of this law to *Melendez*. Unlike here, landlords in *Melendez*, 16 F.4th at 1038-39, had already satisfied their obligations at the time the law was enacted and the challenged law potentially prevented the landlords from collecting rent payments from the contracting tenants and guarantors. There is no allegation here that services have already been rendered for which either party will be unable to seek compensation. Indeed, the parties have had six months to prepare for the FARE Act, and their contracts generally last a year or less. Compl., ¶ 32. It is also not relevant that the Act contains no means-testing of tenant ability to pay because the Act is intended to align the principal-agent relationship for all tenants, not just those in a certain financial category. Pl. Mem. at 23-24. The alternatives proposed by plaintiffs would not correct the market failure here because mere disclosure of the fees is insufficient—the record demonstrates that the problem is not awareness but that tenants lack negotiating power. *Id.* Again, plaintiffs' speculative policy disputes—that rents may increase or landlords may be financially impacted—are not supported by the record, and, the record demonstrates that even slightly increased rents would be less detrimental to renters than the significant upfront costs of the current practice. Ex. F. Accordingly, balancing the minimal impairment of the alleged contracts with the significant public purpose and reasonable and appropriate means of attaining that purpose, plaintiffs' Contract Clause claim fails.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' moving papers, Defendants request that this Court grant the motion to dismiss the complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 25 , 2025

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street, Room 5-143
New York, New York 10007
(212) 356-2369
alulich@law.nyc.gov
jkatzen@law.nyc.gov

By: /s/ _____
Aimee K. Lulich
Jessica Katzen
*Assistant Corporation Counsels*

cc: Attorneys of Record (via ECF)

24-CV-09678 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK, INC., NEW YORK STATE ASSOCIATION OF REALTORS, INC., BOHEMIA REALTY GROUP, BOND NEW YORK REAL ESTATE CORP., REAL NEW YORK LLC, LEVEL GROUP INC., FOUR CORNERS REALTY, LLC, 21 WEST 74 CORP., 8 WEST 119TH STREET HDFC,

Plaintiffs,

-against-

THE CITY OF NEW YORK, *a municipal entity*, VILDA VERA MAYUGA, *as Commissioner of New York City Department of Consumer and Worker Protection*,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
  *Attorney for Defendants*
  *100 Church Street Room 5-143*
  *New York, N.Y.  10007*

  *Of Counsel: Aimee Lulich & Jessica Katzen*
  *Tel:  (212) 356-2369*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ........................................................................................., 2024......*

 *..................................................................................................................... , Esq.*

*Attorney for ...................................................................................................................*

12