Index No. 24-CV-09678 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK, INC., NEW YORK STATE ASSOCIATION OF REALTORS, INC., BOHEMIA REALTY GROUP, BOND NEW YORK REAL ESTATE CORP., REAL NEW YORK LLC, LEVEL GROUP INC., FOUR CORNERS REALTY, LLC, 21 WEST 74 CORP., 8 WEST 119TH STREET HDFC,

            Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity, VILDA VERA MAYUGA, as Commissioner of New York City Department of Consumer and Worker Protection,

            Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 5-143*
*New York, N.Y. 10007*

*Of Counsel: Aimee Lulich & Jessica Katzen*
*Tel: (212) 356-2369*
*Matter #: 2024-103651*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

STANDARD OF REVIEW ............................................................................................................. 3

ARGUMENT .................................................................................................................................... 4

      A.  Likelihood of Success on the Merits. ............................................................... 4

      B.  Irreparable Harm to the Movant Absent an Injunction ................................... 8

      C.  Possibility of Substantial Harm Caused by an Injunction
          To Other Interested Parties and Public Interest ............................................ 11

CONCLUSION ............................................................................................................................... 13

WORD COUNT CERTIFICATION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Bolger v. Young Drugs Prods. Corp.*,
   463 U.S. 60 (1983)..................................................................................................................5

*Buffalo Teachers Federation v. Tobe*,
   464 F.3d 368 (2d Cir. 2006)..................................................................................................10

*City of Dallas v. Stanglin*,
   490 U.S. 19 (1989)..................................................................................................................4

*Conn. State Police Union v. Rovella*,
   2020 U.S Dist. LEXIS 240064
   (D. Conn. Nov. 10, 2020)........................................................................................................3

*Hobby Lobby Stores, Inc. v. Sebelius*,
   568 U.S. 1401 (2012)..............................................................................................................3

*New York v. United States Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020)......................................................................................................9

*Nken v. Holder*,
   556 U.S. 418 (2009)..............................................................................................................11

*Respect Maine PAC v. McKee*,
   562, U.S. 996 (2010)...............................................................................................................3

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)............................................................................................................4, 5

*TikTok Inc. v. Garland*,
   145 S. Ct. 57 (2025).................................................................................................................6

*Turner Broadcasting System, Inc. v. FCC ("Turner I")*,
   512 U.S. 622 (1944)................................................................................................................6

*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007)....................................................................................................3

**Statutes**

Fed. R. App. P. 8(a)(1)(C) .............................................................................................................3

Fed. R. Civ. P. 8(a) ........................................................................................................................1

Fed. R. Civ. P. 62(c) ......................................................................................................................3

**Statutes** **Pages**

N.Y.C. Admin. Code § 20-699.20, *et seq.*..................................................................................1

N.Y.C. Admin. Code § 20-699.21(a)(2) ..................................................1, 2, 4, 6, 7, 8, 9, 10, 11, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

REAL ESTATE BOARD OF NEW YORK, INC.,
NEW YORK STATE ASSOCIATION OF
REALTORS, INC., BOHEMIA REALTY GROUP,
BOND NEW YORK REAL ESTATE CORP.,
REAL NEW YORK LLC, LEVEL GROUP INC.,
FOUR CORNERS REALTY, LLC, 21 WEST 74
CORP., 8 WEST 119TH STREET HDFC,

24-CV-09678 (RA)

Plaintiffs,

-against-

THE CITY OF NEW YORK, *a municipal entity*,
VILDA VERA MAYUGA, *as Commissioner of
New York City Department of Consumer and
Worker Protection*,

Defendants.
------------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL**

Defendants City of New York ("City") and New York City Department of Consumer and Worker Protection Commissioner Vilda Vera Mayuga in her official capacity, by their attorney Muriel Goode-Trufant, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in opposition to the Plaintiffs' motion for an injunction pending appeal of New York City Administrative Code ("Admin. Code") § 20-699.21(a)(2) pursuant to Rule 8(a) of the Federal Rules of Civil Procedure.

The FARE Act was passed by New York City Council on November 13, 2024 and became law on December 13, 2024, but did not go into effect until June 11, 2025. Admin. Code § 20-699.20, *et seq*. Plaintiffs commenced this action by Complaint on December 16, 2024, challenging the entirety of the FARE Act pursuant to the First Amendment and Contract Clause

of the Constitution, as well as alleging that the FARE Act was preempted by state law. ECF Document Number ("Doc. No.") 1. Plaintiffs moved for a preliminary injunction of the FARE Act on January 13, 2025. ECF Doc. No. 19. Defendants opposed the motion for preliminary injunction and moved to dismiss the complaint. ECF Doc. No. 36. The motion for preliminary injunction and the motion to dismiss were fully briefed, including the submission of amicus briefs by New York State and Neighbors Together, and the Court heard oral arguments on May 2, 2025. *See, e.g.*, ECF Doc. Nos. 19-27, 36-38, 41, 45, 49-53, 60, 63 and Minute Entry dated May 2, 2025. Notably, a significant portion of the briefing and arguments focused on Plaintiffs' First Amendment challenge to the "publication bar" codified in Admin. Code § 20-699.21(a)(2). By Opinion & Order dated June 10, 2025, this Court denied Plaintiffs' motion for a preliminary injunction of enforcement of the FARE Act in its entirety and dismissed Plaintiffs' First Amendment and preemption claims. ECF Doc. No. 61. In pertinent part, the Court found that Plaintiffs had not stated a cognizable claim that Admin. Code § 20-699.21(a)(2) violated their First Amendment rights. Opinion & Order at 12-25.

Now, Plaintiffs ask the Court to reverse its well-reasoned decision, disrupt the status quo, and enjoin the City's enforcement of the already-in-effect Admin. Code § 20-699.21(a)(2) pending appeal, notwithstanding that the Court denied just such a request for a preliminary injunction and dismissed Plaintiffs' challenge to that provision for failure to state a claim. Plaintiffs merely reiterate the same arguments and allege the same speculative contentions about the FARE Act's purported impacts that have already been considered and rejected by this Court in the challenged Opinion & Order. They cannot establish that they are "indisputably entitled" to an injunction pending appeal; indeed, they cannot demonstrate that they meet any of the elements required for such relief because they have not articulated irreparable injury, they

cannot succeed on the merits of a First Amendment claim, and an injunction at this stage would harm the interested parties and go against the public interest.

## STANDARD OF REVIEW

Plaintiffs purport to move for an injunction pending appeal pursuant to Fed. R. App. P. 8(a)(1)(C), which directs that, prior to moving for a stay pending appeal before the Second Circuit, a party must first seek an injunction pending appeal before the District Court. A District Court has discretion to grant an injunction pending appeal pursuant to Fed. R. Civ. P. 62(c). In deciding whether to grant such an injunction, the Court must consider: (1) likelihood of success on the merits; (2) irreparable harm to the movant absent an injunction; (3) possibility of substantial harm to other interested parties caused by an injunction; and (4) the public interest. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). The burden to establish all four factors is on the moving party. *Id.*

Indeed, Plaintiffs must satisfy a particularly demanding standard where, as here, they request an injunction despite the Court's recent prior denial of such relief. "[I]n order to justify an injunction by the district court granting injunctive relief pending appeal of the district court's denial of that same relief, the [Plaintiff] must show that its rights to an injunction are 'indisputably clear.'" *Conn. State Police Union v. Rovella*, 2020 U.S Dist. LEXIS 240064, *2-*5 (D. Conn. Nov. 10, 2020) (collecting cases); *see also, e.g., Respect Maine PAC v. McKee*, 562, U.S. 996, 996 (2010) ("Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts."). When such a request is made to a Court of Appeals, it may issue an injunction pending appeal when it is "necessary or appropriate in aid of [its] jurisdiction" and "the legal rights at issue are indisputably clear." *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012). Plaintiffs have not, and

3

cannot, establish any of the four factors support their request for an injunction, let alone demonstrate that they have an "indisputably clear" right to an injunction pending appeal, and thus, their motion should be denied.

## ARGUMENT

A.     **Likelihood of Success on the Merits.**

Plaintiffs have no likelihood of success on the merits in their attempt to overrule this Court's ruling regarding Admin. Code § 20-699.21(a)(2). The Court correctly dismissed Plaintiffs' First Amendment and Free Speech Clause claims after finding that § 20-699.21(a)(2) satisfies the *Central Hudson* test as a matter of law.[1] Plaintiffs' motion merely reiterates the same arguments raised in its motion for a preliminary injunction and Complaint, which have already been rejected by this Court. And, like in Plaintiffs' previous filings, they misconstrue § 20-699.21(a)(2), calling it a "publication bar," when it reality it does not bar any publications, but instead bars the collection of fees from tenants by brokers who were retained by a landlord, as evidenced by their publication of a listing with the permission of a landlord.

First, Plaintiffs are incorrect that the Court's holding "misunderstands the commercial-speech framework and does not engage with Plaintiffs' argument for strict scrutiny under *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)." Pl. Mem. at 5. The Court considered and rejected Plaintiffs' argument that strict scrutiny should apply, distinguishing the instant case from *Sorrell* because § 20-699.21(a)(2) is neither a content-based nor speaker-based restriction. *See* Opinion & Order at 14–16. The Opinion & Order explains that heightened scrutiny should not apply although the challenged provision applies only to brokers; "Rather, it applies equally to all

---

[1] Defendants maintain that section 20-699.21(a)(2) is a regulation of conduct—that is, the charging of fees—that has a merely incidental burden on speech, and therefore does not implicate the First Amendment. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

4

brokers, because brokers are primarily—if not exclusively—responsible for advertising open listings, Compl.¶¶ 35–39, and application to any other group would thus have little practical effect." *Id.* at 17. And, the law is not content based because it "impacts only the actions that a broker may take after publishing a listing—namely, whether or not the broker may impose a fee on the tenant." *Id.* at 14–16.

Plaintiffs have not established that this Court "turned *Sorrell* on its head." Pl. Mem. at 8. The FARE Act is not similar to the challenged state law in *Sorrell*. For background, the law in *Sorrell* sought to address a marketing process known as "detailing," where pharmacies receive prescriber-identifying information when processing prescriptions and sell that information to data miners. 564 U.S. at 557–558. The data miners then produce reports on prescriber behavior and lease those reports to pharmaceutical manufacturers, who use those reports to refine marketing tactics and increase sales to prescribers. *Id.* To try to prohibit the practice of "detailing," the challenged law provided that absent a prescriber's consent, prescriber-identifying information may not be sold by pharmacies and similar entities for marketing purposes or used for marketing by pharmaceutical manufacturers. *Id.* at 559. However, that same information was allowed to be purchased, acquired, and used for other types of speech and by other speakers. *Id.* at 559–560. Therefore, the Court found the law to be a content- and speaker-based restriction on sale, disclosures, and use of a specific type of information, and subjected the law to strict scrutiny. *Id.* at 563.

The FARE Act, on the other hand, does not seek to eliminate brokers' practices or eliminate open listings. It merely seeks to alter the payment model in the rental market, to ensure that the party who retains the broker's services pays for those services. Unlike in *Sorrell*, under the FARE Act, brokers are not prohibited from exchanging a certain type of information about

5

rentals, and brokers are not targeted unequally as compared to another group. Therefore, contrary to Plaintiffs' arguments, publication of open listings is not "unprofitable," because brokers can seek payment from landlords. Pl. Mem. at 6. Plaintiffs' attempt to analogize the FARE Act with the law in *Bolger v. Young Drugs Prods. Corp.*, 463 U.S. 60 (1983) is equally unavailing. Unlike the law in *Bolger* that prohibited any unsolicited advertisement of contraceptives from being carried or delivered by mail, *id.* at 61–62, the FARE Act does not prohibit publication of rental vacancies in any manner. Instead, Admin. Code § 20-699.21(a)(2) prohibits the collection of fees from tenants by a broker who has published a listing with permission from a landlord.

      The challenged provision of the FARE Act is more similar to the challenged provisions in *TikTok Inc. v. Garland,* 145 S. Ct. 57 (2025) and *Turner Broadcasting System, Inc. V. FCC ("Turner I")*, 512 U.S. 622 (1944), which both dealt with regulations on conduct that were subjected to the *Central Hudson* analysis. In *TikTok*, a law that would ban TikTok based on ownership, which did not regulate creators or content in any way, was subject to intermediate scrutiny because a ban of TikTok would burden 170 million users engaged in content generation and moderation, expression, and association. 145 S. Ct. at 66. In *Turner I*, provisions of the Cable Television Consumer Protection and Competition Act that required cable television systems to devote a portion of their channels to transmission of local broadcast stations was also subject to intermediate, and not strict scrutiny, because the rules were content-neutral and not motivated by any particular message spoken by cable operators. 512 U.S. at 642. Similarly, while this Court found that under § 20-699.21(a)(2), "broker's speech . . . serves as the predicate for the application of the prohibition," the prohibition neither targets broker publications based on their content, nor distinguishes between brokers and other speakers in the residential real estate market, and therefore is not subject to strict scrutiny. Opinion & Order at 13, 17.

6

Plaintiffs also do not identify any error in the Court's application of intermediate scrutiny, nor do Plaintiffs' allegations about rising rents alter the *Central Hudson* analysis. The Opinion & Order found that § 20-699.21(a)(2) "undoubtedly advances the City's interest in correcting that market failure and alleviating its resultant harms." Opinion & Order at 22.[2] The Court acknowledged that § 20-699.21(a)(2) furthers the City's "undoubtedly substantial" interests by "preventing the creation of a loophole in which a landlord might retain a broker to publish an open listing, only to later claim that the broker is not his agent—thereby enabling the broker to impose a fee on the tenant." *Id.* at 18, 20. This Court has already considered and rejected the same arguments raised in the instant motion by Plaintiffs alleging that the provision does not advance the City's interest, and therefore its burden on commercial speech is unjustified. *See id.* at 22. The Court found that Plaintiffs' arguments that the challenged provision would cause landlords to raise rents and that the provision would disincentivize brokers from publishing listings fail, because those arguments go to the question of whether the law is sound policy, and not whether it is constitutional under the First Amendment and Free Speech clause. *See id.*

Plaintiffs' arguments about the immediate impact of the FARE Act ignore the stated purpose of the FARE Act, which was to correct a market failure where tenants were forced to pay fees to brokers whom did they did not retain and from whom they did not receive valuable services. This market failure resulted in prohibitive upfront costs, which contributed to low vacancy rates and trapped New Yorkers in rentals that did not serve their needs. Plaintiffs' rehashing of earlier-rejected allegations about fewer open listings and increased rents fail to weaken the Court's finding that that § 20-699.21(a)(2) directly advances the City's substantial goals. This Court

---

[2] That Plaintiffs seek to only enjoin § 20-699.21(a)(2) demonstrates that this provision is necessary for furthering the law's substantial interests, and that the requested injunction would gravely frustrate the purpose of the law by creating a loophole by which landlords could choose brokers to list their property but disavow an obligation to pay the broker fee.

7

acknowledged that "even if the Act may indirectly reduce the accessibility of information about available properties, the balancing of that potential consequence against the Act's direct effects is a judgment for the City Council, not the Courts." Opinion & Order at 23 (internal citations omitted).

Even if increases in rent were relevant to the *Central Hudson* analysis here, the state of the rental market just two weeks after the effective date of the FARE Act does not (and indeed, cannot) reflect the long-term impact of the legislation. It is too soon to accurately understand the impact that the FARE Act will have on vacancy rates, costs of moving, and tenant negotiating power at lease renewals. Nevertheless, the Order & Opinion makes clear that "although the FARE Act may indeed have the outcome of which Plaintiffs warn, the Court's conclusion remains the same." Opinion & Order at 23.

**B.      Irreparable Harm to the Movant Absent an Injunction**

Plaintiffs allege, again, that they are harmed by Admin. Code § 20-699.21(a)(2) because, in the few weeks since the FARE Act went into effect, rents have risen and housing mobility has decreased, and it has become "more difficult to make ends meet." Pl. Mem. at 2-4. While Plaintiffs filed three Declarations by broker Plaintiffs in support of the instant motion, the alleged harms set forth in them repeat those contained in the brokers' Declarations in support of the motion for preliminary injunction and opposition to the motion to dismiss, failing to demonstrate that the Court should overturn its previous Opinion & Order. Declaration of Sarah Saltzberg ("Saltzberg Decl."), ECF Doc. No. 69; Declaration of Brian Hourigan ("Hourigan Decl.), ECF Doc. No. 70; and Declaration of Robert Rahmanian ("Rahmanian Decl."), ECF Doc. No. 71. Notably, the Declarations make broad, conclusory, and unsupported allegations regarding the experiences and alleged statements of unidentified landlords and renters, and are devoid of specific assertions regarding any alleged harm or injury to the declarants themselves or their

8

businesses. *Id.* Some of the allegations are attributed to alleged statements of unidentified renters made to unidentified brokers who are not the declarant. Saltzberg Decl., ECF Doc. No. 69 at ¶¶ 4, 8 & 9; Hourigan Decl., ECF Doc. No. 70 at ¶¶ 4, 8, 10 & 14; Rahmanian Decl., ECF Doc. No. 71 at ¶¶ 4, 8 & 9. To the extent brokers are mentioned at all, it is to report that, generally, unidentified agents might, at some point in the future, make less money or be unable to work as brokers anymore, or that some unidentified agents are confused about the FARE Act's requirements.[3] Saltzberg Decl., ECF Doc. No. 69 at ¶ 14; Hourigan Decl., ECF Doc. No. 70 at ¶ 15; Rahmanian Decl., ECF Doc. No. 71 at ¶ 13. None of these allegations demonstrate irreparable harm. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. United States Dep't of Homeland Sec.*, 969 F. 3d 42, 86 (2d Cir. 2020) (internal quotation omitted). Indeed, Plaintiffs' allegations that landlords, consumers *and* brokers are harmed by the FARE Act are contradictory. Plaintiffs allege that landlords are raising rents to recoup the amount spent on broker fees equal to 15% of the annual rent. If Plaintiffs' allegations are correct, landlords are not absorbing any additional costs and brokers are continuing to collect 15% fees when they successfully fill an apartment as before. Any alleged impact would fall upon consumers; however, as data collected during the legislative process indicated, over half of people in the City indicated they would be more likely to move if rent were higher but up-front costs were less onerous and there is no allegation that the FARE Act has not reduced up-front costs for renters. The Declarations do not

---

[3] Specifically, Plaintiffs allege that unidentified brokers are worried that they may violate Admin Code § 20-699.21(a)(2) by showing prospective tenants an apartment. It is clear that the provision, and the FARE Act itself, does not prohibit showing any person any vacant apartment. Rather, if a broker lists a vacancy with the permission of the landlord, the broker must collect any fee for filling that vacancy from the landlord. To the extent a broker is listing a vacant apartment, it is presumed that the landlord has agreed to pay the fee when an appropriate tenant is secured.

9

provide any admissible or credible[4] information upon which this Court could conclude that Plaintiffs are suffering irreparable harm from the FARE Act.

Plaintiffs additionally fail to distinguish between purported effects of Admin. Code § 20-699.21(a)(2) and the effects of the rest of the FARE Act. If Plaintiffs' motion were granted, it would remain unlawful for a landlord's agent to collect a fee from a tenant, and Plaintiffs have not established that the alleged impacts of the FARE Act about which they complain in their motion arise from this particular provision as distinct from the rest of the FARE Act. However, enjoining Admin. Code § 20-699.21(a)(2) would frustrate enforcement of the FARE Act and reduce the consumer protection it is intended to provide. Without Admin. Code § 20-699.21(a)(2), there would remain a loophole through which brokers could argue that they were not "retained by" a landlord who permits them to publish a listing, placing the burden of paying broker fees on renters notwithstanding that the landlord chose to list the vacancy through a broker. Further, enjoining Admin. Code § 20-699.21(a)(2), which sets forth actions that demonstrate a broker was "retained by" a landlord and prohibited from charging the tenant the broker fee, could render it more difficult for brokers to determine when they may lawfully charge a tenant the broker fee.

Further, even if this Court were to accept Plaintiffs' allegations of higher rents or reduced transparency regarding available units for renters, they amount to generalized grievances about the impact of the FARE Act on the public, not particularized and concrete harms to Plaintiffs. However, the Court may not act as a "superlegislature[], overturning laws as unconstitutional when [it] believe[s] the legislature acted unwisely." Opinion & Order at 37 (*quoting Buffalo Teachers Federation v. Tobe*, 464 F.3d 368, 371 (2d Cir. 2006). As the Court recognized: "[A]lthough some

---

[4] Further weakening the Declarations' credibility is that they appear to largely be word-for-word copies of one another rather than declarations describing the personal knowledge of the declarant. *Compare* Saltzberg Decl. ¶¶ 3-12 *with* Hourigan Decl. ¶¶ 3-4, 6-8, 10-12, 14 *and* Rahmanian Decl., ¶¶ 3-12.

10

of Plaintiffs' prophecies may prove true, Plaintiff's remedy is through the political process, not in court." Opinion & Order at 41.  Accordingly, these broad, speculative, and conclusory allegations fall far short of establishing any harm to Plaintiffs, let alone irreparable harm, and Plaintiffs fail to demonstrate entitlement to an injunction pending appeal.

C. **Possibility of Substantial Harm Caused by an Injunction To Other Interested Parties and Public Interest**

For the same reasons described in Point B, *supra*, Plaintiffs' allegations that an injunction would not harm the City and that the public interest would be served by an injunction fail.  The allegations in the Declarations and the Memorandum of Law regarding the impact of the FARE Act on rents and housing availability lack support or credibility and evidence a policy disagreement rather than a justiciable legal claim.  An injunction pending appeal would harm the City and the public interest by altering the status quo and halting the enforcement of a duly-enacted law.  "The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final." *Nken v. Holder*, 556 U.S. 418, 427 (2009).  Here, the law is in effect.  Any injunction would occasion public confusion regarding the law, which would be compounded when Plaintiffs' appeal fails on the merits, as it is likely to do, and the injunction is lifted.  Additionally, halting implementation of the provision now would require the City to incur additional time and expense to change its enforcement efforts.

Further, Plaintiffs' allegations regarding the FARE Act's impact are based upon approximately three weeks of data during what is understandably an adjustment period for brokers, landlords, and renters.  If Plaintiffs' allegations in the instant motion are to be believed, neither brokers nor landlords used the six-month period before the FARE Act went into effect to create a plan for conducting business in a market in which the party who retains the broker pays the broker

11

fee. An injunction pending appeal would merely permit brokers and landlords to further delay adjusting their business practices so that landlords who retain brokers pay the broker fee. The disruption of an injunction would harm the City, interested parties, and the public interest.

Finally, the FARE Act was enacted to correct a market failure in which renters, the party with the least negotiating power, were required to pay broker fees when a landlord chose to retain a broker to list and fill their vacancy. The legislative record demonstrates that this causes large up-front costs for renters when they move, and that a majority of households were prevented from moving by the up-front costs and would be better able to pay higher rent than up-front broker fees. *See* Opinion & Order at 6 (citing July12, 2024 Committee Report). Further, the record indicated that tenants were forced to pay broker fees even if they did not receive valuable services from the broker and that tenants were unable to negotiate these fees in practice. *Id.* To the extent Plaintiffs make allegations about higher rent or fewer available apartments, they do not dispute that the FARE Act is protecting renters from the large up-front fees that prevent many households from moving to more appropriate housing. Enjoining a portion of the FARE Act would remove that protection, particularly because Admin. Code § 20-699.21(a)(2) prevents landlords from choosing to have brokers list and fill the vacancy while denying that they hired a specific broker so as to evade paying the fee. This would again burden renters with the up-front costs that prove prohibitive to many households wishing to move.

By contrast, Plaintiffs have not alleged any non-generalized, specific injuries to themselves in the absence of an injunction, and Plaintiffs failed to state a cognizable challenge to Admin. Code § 20-699.21(a)(2) and therefore cannot succeed on the merits of an appeal. Because Plaintiffs failed at every turn to satisfy their particularly high burden to establish all four of the

12

elements required to demonstrate entitlement to an injunction pending review, it is not "indisputably clear" that they are entitled to such relief and the motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court deny the motion for an injunction pending appeal, together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          July 7, 2025

                                           **MURIEL GOODE-TRUFANT**
                                           Corporation Counsel of the City of New York
                                           *Attorney for Defendants*
                                           100 Church Street, Room 5-143
                                           New York, New York 10007
                                           (212) 356-2369
                                           alulich@law.nyc.gov
                                           jkatzen@law.nyc.gov

By:    /s/
         Aimee K. Lulich
         Jessica Katzen
         *Assistant Corporation Counsels*

cc:    Attorneys of Record (via ECF)

## **WORD COUNT CERTIFICATION**

I, Aimee K. Lulich, hereby certifies that the Memorandum of Law in Opposition to Plaintiffs' Motion for an Injunction Pending Appeal complies with the Local Rules of the United States District Court for the Southern District of New York Rule 7.1(c), regarding the length of a Memorandum of Law.

Excluding the caption, table of contents, table of authorities, the signature block and any required certificates, the Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration contains **4, 269 words** as calculated by Microsoft Word.

Dated:    New York, NY
         July 7, 2025

                                    MURIEL GOODE-TRUFANT
                                    Corporation Counsel of the City of New York
                                    *Attorney for Defendants*
                                    100 Church Street, Room 5-143
                                    New York, New York 10007
                                    (212) 356-2369
                                    alulich@law.nyc.gov
                                    jkatzen@law.nyc.gov

                          By:    /s/
                                    Aimee K. Lulich
                                    Assistant Corporation Counsel

24-CV-09678 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK, INC., NEW YORK STATE ASSOCIATION OF REALTORS, INC., BOHEMIA REALTY GROUP, BOND NEW YORK REAL ESTATE CORP., REAL NEW YORK LLC, LEVEL GROUP INC., FOUR CORNERS REALTY, LLC, 21 WEST 74 CORP., 8 WEST 119TH STREET HDFC,

Plaintiffs,

-against-

THE CITY OF NEW YORK, *a municipal entity*, VILDA VERA MAYUGA, *as Commissioner of New York City Department of Consumer and Worker Protection*,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR AN INJUNCTION PENDING APPEAL**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
  *Attorney for Defendants*
  *100 Church Street Room 5-143*
  *New York, N.Y.  10007*

  *Of Counsel: Aimee Lulich & Jessica Katzen*
  *Tel:  (212) 356-2369*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ......................................................................................, 2024......*

*................................................................................................................, Esq.*

*Attorney for ..................................................................................................*

15