UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
REAL ESTATE BOARD OF NEW YORK, INC., NEW :
YORK STATE ASSOCIATION OF REALTORS, INC., :
BOHEMIA REALTY GROUP, BOND NEW YORK REAL :
ESTATE CORP., REAL NEW YORK LLC, LEVEL :
GROUP INC., FOUR CORNERS REALTY, LLC, 21 WEST :
74 CORP., 8 WEST 119TH STREET HDFC, :
                                                          Plaintiffs,  :

:  Civ. No. 1:24-cv-09678 (RA)

   v.                                                    :

THE CITY OF NEW YORK, *a municipal entity*, VILDA :
VERA MAYUGA, *as Commissioner of New York City* :
*Department of Consumer and Worker Protection,*   :

                                               Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

**HOGAN LOVELLS US LLP**
390 Madison Ave.
New York, N.Y. 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

CONCLUSION .........................................................................................................................9

## TABLE OF AUTHORITIES

Page

CASES:

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996)...............................................................................................................3

*Agudath Israel of Am. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020).................................................................................................5

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983)...............................................................................................................3

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980).............................................................................................................5

*County of Rockland v. Metropolitan Transp. Auth.*,
   No. 24-cv-2285, 2025 WL 100901 (S.D.N.Y. Jan. 14, 2025) ..............................................1

*Delux Public Charter, LLC v. County of Westchester*,
   No. 22-cv-01930, 2024 WL 3744167 (S.D.N.Y. July 25, 2024)..........................................1

*Hirschfeld v. Board of Elections*,
   984 F.2d 35 (2d Cir. 1993)...................................................................................................1

*In re NTE Conn. LLC*,
   26 F.4th 980 (D.C. Cir. 2022)..............................................................................................5

*LaRouche v. Kezer*,
   20 F.3d 68 (2d Cir. 1994).....................................................................................................1

*Loveridge v. Pendleton Woolen Mills, Inc.*,
   788 F.2d 914 (2d Cir. 1986).................................................................................................5

*N.Y Progress & Prot. PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013).................................................................................................7

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992).............................................................................................................3

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999).................................................................................................1

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011).........................................................................................................1, 3

*Thompson v. Western States Med. Ctr.*,
    535 U.S. 357 (2002) ..................................................................................................... 4

*TikTok Inc. v. Garland*,
    145 S. Ct. 57 (2025) .................................................................................................. 2, 3

*Turner Broadcasting System, Inc. v. FCC*,
    512 U.S. 622 (1994) .................................................................................................. 3, 5

*United States v. National Treasury Emps. Union*,
    513 U.S. 454 (1995) ..................................................................................................... 3

*Veterans Guardian VA Claim Consulting LLC v. Platkin*,
    133 F.4th 213 (3d Cir. 2025) ...................................................................................... 2

**STATUTES:**

N.Y.C. Admin. Code § 20-699.20 ................................................................................. 6, 7

N.Y.C. Admin. Code § 20-699.21(a)(1) ............................................................................ 6

N.Y.C. Admin. Code § 20-699.21(a)(2) ............................................................................ 8

N.Y.C. Admin. Code § 20-699.22(a) ................................................................................. 5

**OTHER AUTHORITY:**

Jennifer Senior, *In Conversation: Antonin Scalia*, New York Magazine (Oct. 4,
    2013), https://perma.cc/HMK5-VUW4 ..................................................................... 4

**ARGUMENT**

**1.** Defendants misstate the standard of review. The question on a motion for an injunction pending appeal is not whether the movant is "indisputably entitled" to relief. Opp. 2. The relevant inquiry is set out in the Second Circuit's decision in *LaRouche v. Kezer*: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a 'substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected." 20 F.3d 68, 72 (2d Cir. 1994) (quoting *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)). "As the standard makes clear, a grant of injunctive relief pending appeal does not depend solely or even primarily on a consideration of the merits." *Id.*; *see also County of Rockland v. Metropolitan Transp. Auth.*, No. 24-cv-2285, 2025 WL 100901, at *1 (S.D.N.Y. Jan. 14, 2025) (applying this standard); *Delux Pub. Charter, LLC v. County of Westchester*, No. 22-cv-01930, 2024 WL 3744167, at *1 (S.D.N.Y. July 25, 2024) (same).

Defendants are also wrong to suggest that it is Plaintiffs who seek to disrupt the status quo. Opp. 2. The status quo is the "last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche*, 20 F.3d at 74 n.7 (citation omitted). That is the state of the law prior to the publication bar going into effect. The rule requiring a " 'clear' or 'substantial' likelihood of success" is inapplicable because "the injunction sought will [not] alter . . . the status quo." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999) (per curiam) (citation omitted). In short, the injunction will restore the status quo during the pendency of the appeal.

**2.** The publication bar is subject to heightened scrutiny because it "seeks to achieve its policy objectives through the indirect means of restraining certain speech by certain speakers."

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 577 (2011); *see* Mot. 5-10. Rather than address this defect in the law, Defendants retreat to the Court's holding that the publication bar is content and speaker neutral. Opp. 4-5. But they do so without making any effort to grapple with Plaintiffs' arguments and authorities to the contrary. *See* Mot. 6 n.1, 8.

True, the publication bar regulates "the actions that a broker may take after publishing a listing—namely, whether or not the broker may impose a fee on the tenant." Opp. 5 (quoting Opinion & Order 16). But the fact that the publication bar burdens rather than prohibits brokers' commercial speech does not render it a content- and speaker-neutral restriction. *See Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 219 (3d Cir. 2025) (explaining that "[l]aws that forbid charging for speech burden speech"). The burden is content specific because brokers can " 'avoid or mitigate' " the bar on charging a tenant fee by " 'altering their speech.' " Opinion & Order 16-17 (quoting *TikTok v. Inc. v. Garland*, 145 S. Ct. 57, 67 (2025) (per curiam)). Because the publication bar does not prohibit brokers from charging a tenant fee for a property they do not publish, brokers can avoid the publication bar by altering their commercial-speech practices to eliminate listings—such as by advertising their services generally. But that form of advertising is less effective than an open listing because prospective tenants want to know what kind of access to potentially desirable inventory a broker can offer before agreeing to work with him. Common sense dictates that an advertisement identifying a specific property the broker can show a consumer will be more appealing than a generic advertisement bereft of any available property.

The burden is speaker specific, moreover, because it applies only to brokers. The FARE Act only prohibits brokers from charging a fee after publishing a listing.

2

Defendants attempt to distinguish *Sorrell* by stating that the publication bar "merely seeks to alter the payment model in the rental market, to ensure that the party who retains the broker's services pays for those services." Opp. 5. That is tantamount to an admission. The thrust of *Sorrell* is that a government may not single-out particular speakers for disfavored treatment because it dislikes those speakers' "effect on the . . . market." Opinion & Order 16. Such a law goes "beyond mere content discrimination, to actual viewpoint discrimination." *Sorrell*, 564 U.S. at 565 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992)).

Defendants' attempt (at 6) to distinguish *Bolger v. Young Drugs Products Corp.*, 463 U.S. 60 (1983), assumes that the First Amendment only applies when speech is "prohibited" outright. That is wrong. A "prohibition on compensation unquestionably imposes a significant burden on expressive activity." *United States v. National Treasury Emps. Union*, 513 U.S. 454, 468 (1995). And Plaintiffs have already explained why *TikTok* and *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 611 (1994), are inapposite. *See* Mot. 8-9. Yet Defendants offer no response. *See* Opp. 6.

**3.** Defendants likewise do not meet their burden to demonstrate that the City Council drew a "reasonable inference[] based on substantial evidence" that the publication bar would improve housing mobility. *Turner*, 512 U.S. at 666; *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (holding that "without any findings of fact, or indeed any evidentiary support whatsoever, we cannot agree with the assertion that the price advertising ban will significantly advance the State's interest in promoting temperance"); Mot. 10-12.

At the hearing on the FARE Act, the Deputy Commissioner of Housing Preservation and Development testified that he was aware of "no data" to support the notion that ending tenant-pay broker fees would improve housing mobility. ECF 21-1 at 37:21. Councilmembers similarly

3

confessed that there was an "embarrassing" lack of evidence connecting problems in housing mobility to tenant-pay broker fees. *Id*. at 37:23. That is undoubtedly why the City Council opted not to draw that inference. *See* ECF 21-9 ("Committee Report") at 10 (dismissing housing mobility concerns and insisting that the FARE Act "is not an attempt to solve the affordability crisis in the city"). The Court erred by drawing the inference the Council would not. *See* Opinion & Order 22.

More fundamentally, "whether the law is sound policy" emphatically does "go to the question of whether [the publication bar] . . . is constitutional under the First Amendment." Opp. 7. *Central Hudson* requires courts to scrutinize the policy rationale underlying a speech restriction to ensure it justifies infringing constitutionally protected activity. Other constitutional rights—substantive due process, for instance—may permit Justice Scalia's metaphorical "stupid but constitutional" stamp. Jennifer Senior, *In Conversation: Antonin Scalia*, New York Magazine (Oct. 4, 2013), https://perma.cc/HMK5-VUW4. But the First Amendment requires that if the government is going to abridge a speaker's right to publish commercial speech, it must do so in furtherance of an effective policy that fixes a real problem.

Thus, "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 371 (2002). Defendants fail that policy test to the extent they hang their hat on "correct[ing] a market failure where tenants were forced to pay fees to brokers whom . . . they did not retain," Opp. 7, because the City Council's desire to "align the principal-agent relationship," Committee Report at 10, would have been equally well served at no cost to speech by the originally contemplated FARE Act. The original version of the bill would have required that brokers collect their fee "from the party employing" them. ECF 1-2 ("Int. No. 360")

4

§ 26-3602(a). Such a straightforward conduct requirement raises no First Amendment concerns; the publication bar does.

Defendants' invocation of a putative interest in ensuring that prospective tenants "receive valuable services from the broker and that tenants [are] []able to negotiate" the broker fee fails for the same reason. Opp.12. The City Council determined that these interests were already addressed by a separate provision of the FARE Act that requires "[e]very listing related to the rental of residential real property [to] disclose . . . any fee to be paid by the prospective tenant." N.Y.C. Admin. Code § 20-699.22(a); *see also* Committee Report 12. By the City Council's own lights the publication bar is "more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

A speech restriction must also "do more than simply posit the existence of the disease sought to be cured." *Turner*, 512 U.S. at 664 (quotation marks omitted). Defendants' putative interest in "preventing the creation of a loophole in which a landlord might retain a broker to publish an open listing, only to later claim that the broker is not his agent," Opp. 7 (quoting Opinion & Order 18), fails that aspect of *Central Hudson*'s good-policy test because the City Council never substantiated its concern that brokers lie to tenants about being retained by or owing fiduciary obligations to landlords.

**4.** Defendants are also incorrect that Plaintiffs have not shown irreparable harm. *See* Opp. 8-11. For starters, it is axiomatic that "the deprivation of First Amendment rights is an irreparable harm." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020). Every day the publication bar is in effect is one in which the broker Plaintiffs are irreparably harmed.

In addition to the constitutional interests at stake, the publication bar has and will continue to irreparably harm Plaintiffs' businesses. *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788

F.2d 914, 916 (2d Cir. 1986) (noting that "destruction of an ongoing business" may constitute irreparable harm); *In re NTE Conn. LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) (explaining that economic injuries can constitute irreparable harm if "no adequate compensatory or other corrective relief will be available at a later date" (quotation marks omitted)). The publication bar shatters the longstanding business model of the broker Plaintiffs and makes it more difficult for them to earn a living. ECF 70 ("Hourigan Supp. Decl.") ¶ 13. Some agents are likely to be pushed out of the industry entirely. ECF 71 ("Rahmanian Supp. Decl.") ¶ 13; Hourigan Supp. Decl. ¶ 15; ECF 69 ("Saltzberg Supp. Decl.") ¶ 14; ECF 23 ("Porco Decl.") ¶ 23 ("The impact of the FARE Act will likely force my brokerage business to collapse.").

The publication bar hurts landlords, too, by increasing operational costs—requiring them to reduce valuable services, forego needed maintenance, and cancel upgrades. Porco Decl. ¶¶ 16-17. That creates safety issues, makes properties less competitive, and damages relationships with tenants. *Id*.; *see also id*. ¶ 17 ("The margins for landlords are so thin, the FARE Act only makes them that much thinner.").

Defendants blithely respond that the 15% increase in rents shows that everyone is still getting paid. Opp. 9. This is not a rising tide that lifts all boats. As Plaintiffs' declarations demonstrate, landlords and brokers—not to mention many tenants—preferred the pre-publication-bar status quo. Mot. 2-4. Moreover, Defendants point to no actual evidence that brokers have been able to negotiate corresponding commissions/fees that are now being paid by landlords. None. And even if *some* brokers who used to work under the open-listing model can shift to an exclusive-landlord-agent's model, many cannot. Their 15% isn't shifted from one payor to another; it disappears entirely.

6

Defendants confusingly assert that enjoining the publication bar would not alleviate the irreparable harm to Plaintiffs because "it would remain unlawful for a landlord's agent to collect a fee from a tenant." Opp. 10. But the FARE Act's separate prohibition on a "landlord's agent" charging a tenant fee only applies to a "listing agent," which the FARE Act defines as "a person who has entered into a listing agreement to act as an agent of the landlord for compensation." N.Y.C. Admin. Code § 20-699.20; *see also id.* § 20-699.21(a)(1). That separate prohibition is thus irrelevant to the disruption of the open listing model that is the subject of the supplemental declarations and Plaintiffs' motion for an injunction pending appeal. *See* Saltzberg Supp. Decl. ¶ 5; Hourigan Supp. Decl. ¶ 5; Rahmanian Supp. Decl. ¶ 5. As the Court explained, open listings are those for which a landlord does "*not* enter exclusive listing agreements with brokers." Opinion & Order 4 (emphasis added).

Defendants also offer a novel argument that the publication bar is necessary to ensure that brokers understand that they are "retained by" a landlord—and thus subject to the FARE Act's separate prohibition on a "landlord's agent" paying a broker fee—solely because the broker publishes a listing with the landlord's permission. Opp. 10. But the FARE Act says no such thing. As this Court recognized, the effect of the publication bar "is that a broker who publishes an open listing cannot charge her fee to the tenant who ultimately rents the property—and is therefore constrained to seek compensation from the landlord—*even though the agent has no formal agency agreement with the landlord*." Opinion & Order 7-8 (emphasis added). And, as discussed above, the FARE Act's separate prohibition on a landlord's agent charging a tenant fee only applies to "a person who has entered into a listing agreement to act as an agent of the landlord for compensation." N.Y.C. Admin. Code § 20-699.20.

7

**5.** On the other side of the ledger, "securing First Amendment rights is in the public interest" and the "Government does not have an interest in the enforcement of an unconstitutional law." *N.Y Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (citation omitted). Defendants' opposition disregards these constitutional interests entirely. And its attempt to downplay the havoc wreaked by the publication bar is unconvincing. Defendants' chief argument is that it is too soon to know what the ultimate economic impact of the publication bar will be, though Defendants doubtlessly would have criticized Plaintiffs for waiting too long had Plaintiffs waited for the dust to settle before seeking an injunction pending appeal. In any case, the equitable factors inquire into precisely the kind of interim harm that Defendants discount, such as that which may be caused during a potentially unconstitutional "adjustment period." Opp. 11. Speculation about the potential "long-term impact of the legislation," Opp. 8, is irrelevant.

New York City has operated on a tenant-pay open listing system for decades. Defendants will not be harmed by a few additional months' delay as the Court considers the legality of the publication bar. Because the Second Circuit has granted an expedited briefing schedule, briefing on the appeal will be concluded by October 9, 2025. Order, *Real Estate Board of New York, Inc. v. City of New York*, No. 25-1506 (2d Cir. July 8, 2025). And that the City Council already imposed a 180-day grace period between the law's enactment and its effective date demonstrates that market predictability and stability should prevail over immediate abolition of the open-listing system.

8

## CONCLUSION

For the foregoing reasons and those in the motion, the Court should enter an injunction enjoining enforcement of N.Y.C. Admin. Code § 20-699.21(a)(2) to preserve the status quo pending appeal.

Respectfully submitted,

*/s/ Claude G. Szyfer*

| | |
|---|---|
| Sean Marotta (admitted *pro hac vice*) | Claude G. Szyfer |
| J. Andrew Mackenzie (admitted *pro hac vice*) | Darya D. Anichkova |
| Hogan Lovells US LLP | Hogan Lovells US LLP |
| 555 Thirteenth Street, N.W. | 390 Madison Ave. |
| Washington, D.C. 20004 | New York, N.Y. 10017 |
| Telephone: (202) 637-5600 | Telephone: (212) 918-3000 |
| Facsimile: (202) 637-5910 | Facsimile: (212) 918-3100 |
| | claude.szyfer@hoganlovells.com |

*Counsel for Plaintiffs*

July 8, 2025

## **WORD COUNT CERTIFICATION**

    I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.  This certificate certifies that the document complies with the word count limit.  Compliance relied on the word count of the word-processing system used to prepare the document.  The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities and signature block is 2,545 words.

Dated:  New York, New York
           July 8, 2025

                                              */s/ Claude G. Szyfer*
                                              Claude G. Szyfer