UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK, INC.,
NEW YORK STATE ASSOCIATION OF
REALTORS, INC., BOHEMIA REALTY
GROUP, BOND NEW YORK REAL ESTATE
CORP., REAL NEW YORK LLC, LEVEL
GROUP INC., FOUR CORNERS REALTY, LLC,
21 WEST 74 CORP., 8 WEST 119TH STREET
HDFC,

                                Plaintiffs,

                    v.

THE CITY OF NEW YORK, *a municipal entity*,
VILDA VERA MAYUGA, *as Commissioner of
New York City Department of Consumer and
Worker Protection*,

                                Defendants.

24-CV-9678 (RA)

<u>MEMORANDUM
OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

The Court assumes the parties' familiarity with the facts of this case, which are described

in detail in the Court's June 10, 2025 Opinion & Order.  *See Real Est. Bd. of New York, Inc. v. City

of New York*, No. 24-CV-9678, 2025 WL 1644046 (S.D.N.Y. June 10, 2025).  In short, and as

discussed in detail in the Court's prior Opinion, New York is one of only two major American

cities where residential tenants were generally responsible for paying brokerage fees regardless of

whether they even hired a broker.  The Fairness in Apartment Rental Expenses Act (the "FARE

Act" or the "Act"), which took effect on June 11, 2025, ended that practice.  As relevant here, the

Act prohibits residential real estate brokers from imposing brokerage fees on tenants with respect

to properties for which the broker has either (1) published a listing with the landlord's permission;

or (2) agreed to work on behalf of the landlord.  In considering the FARE Act, the City Council

determined that unsolicited brokers' fees constitute a significant financial burden for renters, and in many instances limit their ability to move between properties. It thus enacted the FARE Act with the goal of "align[ing] the principal-agent relationship in the rental market to ensure that the principal pays the agent for services rendered, not a third party." November 13, 2024 Committee Report at 10 ("Comm. Rep."), ECF No. 38-6.

Plaintiffs, a group of trade associations, real estate brokerage firms, and landlords, filed this action against the City of New York and Vilda Vera Mayuga, Commissioner of the New York City Department of Consumer and Worker Protection (the "City"), seeking to enjoin the City's enforcement of the FARE Act. After Plaintiffs filed a motion seeking a preliminary injunction, the City opposed that motion and moved to dismiss the complaint. The Court granted the motion to dismiss with respect to Plaintiffs' First Amendment, New York State Constitution, and state law preemption claims, denied it with respect to Plaintiffs' Contracts Clause claim, and denied Plaintiffs' motion for a preliminary injunction in its entirety. The Court held, in essence, that Plaintiffs' challenge to the Act went fundamentally to its underlying policy—not its constitutionality. On June 12, 2025, Plaintiffs filed a Notice of Interlocutory Appeal. *See* ECF No. 62. Now before the Court is Plaintiffs' motion for a preliminary injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(d), *see* ECF No. 68 ("Mot."), which the City opposes, *see* ECF No. 73. For the reasons that follow, that motion is denied.

## LEGAL STANDARD

A party seeking an "order suspending, modifying, restoring, or granting an injunction while an appeal is pending" "must ordinarily move first in the district court" for the relief. Fed. R. App. P. 8(a)(1). Rule 62 provides that "[w]hile an appeal is pending from an interlocutory order . . . [that] refuses . . . an injunction, the court may . . . grant an injunction on terms for bond

or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d).[1]  "The issuance of [an injunction] pursuant to Rule 62 is a matter committed to the district court's discretion." *Dexter 345 Inc. v. Cuomo*, No. 11-CV-1319, 2011 WL 1795824, at *3 (S.D.N.Y. May 3, 2011), *aff'd,* 663 F.3d 59 (2d Cir. 2011).[2]  "The party requesting [an injunction] bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  The four factors to be considered by a court in deciding whether to issue an injunction pending appeal are: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Dexter 345*, 2011 WL 1795824, at *3; *see also In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007).  "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434.  However, "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *World Trade Ctr.*, 503 F.3d at 170.

## DISCUSSION

Plaintiffs assert that the Court erred by (1) rejecting their argument that, under *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), the FARE Act is subject to heightened scrutiny; and (2) concluding that the FARE Act materially advances the City Council's interest, as required under *Central Hudson Gas & Elec. Corp. v. Public Servs. Comm'n*, 447 U.S. 557 (1980).  Their arguments on these points, however, merely repackage those made with respect to the original

---

[1] Prior to the 2018 amendments to Rule 62, the current text of subdivision (d) of the rule was instead in subdivision (c). The Advisory Committee notes state that the 2018 amendments "reorganized" the subdivisions but "[t]here is no change in meaning." Fed. R. Civ. P. 62 advisory committee's notes to 2018 amendments.

[2] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

motions.  The Court considers each in turn.

Regarding the applicable level of scrutiny, Plaintiffs reiterate their position that the FARE Act is subject to heightened scrutiny because it "seeks to achieve the City Council's 'policy objectives through the indirect means of restraining certain speech by certain speakers.'"  Mot. at 6 (quoting *Sorrell*, 564 U.S. at 577).  The Court has already considered and rejected this argument. The law at issue in *Sorrell* restricted the dissemination and use of pharmaceutical marketing data based on the purpose for which it would be used—i.e., the occupations of the recipient speakers and the content of their speech.  564 U.S. at 564.  The *Sorrell* Court therefore concluded that the law was "designed . . . to target those speakers and their messages for disfavored treatment."  *Id.* at 565.  The FARE Act, by contrast, does not unfairly target brokers, nor does it target their messages for disfavored treatment.  Instead, as the Court stated in its prior Opinion, the FARE Act is content neutral.  "Although it regulates a medium of speech—listings—it does so regardless of their content."  *Real Est. Bd. of New York*, 2025 WL 1644046, at *8.  And while the Act applies exclusively to brokers, it does so "because brokers are primarily—if not exclusively—responsible for advertising open listings, and application to any other group would thus have little practical effect."  *Id.*  Its "differential treatment of brokers is therefore justified by the special characteristics of the New York City rental market."  *Id.*  Accordingly, Plaintiffs' argument that the Act is subject to heightened scrutiny is unlikely to succeed.

Plaintiffs next contend that the Court (1) "never grappled" with their economic analysis "showing that the [FARE Act] won't improve housing mobility;" and (2) failed to "recognize[] that the City Council had no evidence before it that barring tenant-pay opening listings would improve housing [m]obility."  Mot. at 11–12.  The Court, however, had no need to consider Plaintiffs' economic analysis—which was submitted in support of their motion for a preliminary

injunction—because it concluded that Plaintiffs' complaint failed to state a First Amendment claim. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) ("[A court] do[es] not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim."). But even if it had, that analysis would "not provide a basis for [the Court] to second guess the City's conclusion" that unsolicited broker fees contribute to housing immobility—"a conclusion it reached based on its own survey results and firsthand experience receiving complaints from" renters. *Vugo, Inc. v. City of New York*, 931 F.3d 42, 52 (2d Cir. 2019). In other words, Plaintiffs again urge the Court to weigh their evaluation of the FARE Act's wisdom against that of the City Council. Once again, the Court declines that invitation.

Furthermore, contrary to Plaintiffs' contentions, the City Council considered extensive evidence demonstrating a connection between unsolicited brokers' fees and housing immobility, which the Court discussed in detail. "To satisfy the third prong of *Central Hudson*, the City must demonstrate that (1) the harms it recites are real, and (2) that its restriction will in fact alleviate them to a material degree." *Vugo*, 931 F.3d at 52. "[A] commercial speech regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). The City was therefore required to "demonstrate that its commercial speech limitation is part of a substantial effort to advance a valid state interest," which it can accomplish by "marshalling some empirical evidence to support its assumptions." *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 100 (2d Cir. 1998); *cf. 44 Liquormart*, 517 U.S. at 506 (concluding that a regulation failed the third *Central Hudson* prong where the state "presented no evidence to suggest" that it would materially advance the state's goal); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (same).

As the Court stated in its prior Opinion, the City satisfied the *Central Hudson* test through

its consideration of survey and investigative evidence illustrating the effects of unsolicited brokers' fees on housing mobility.  That evidence showed, among other things: (1) that the average upfront moving cost for New York City renters is equivalent to 14 percent of the city's median household income; (2) that 60 percent of the city's renters said brokers' fees prevent them from moving; (3) that 54 percent of the city's renters would rather pay a higher monthly rent than a broker's fee; and (4) that although brokers' fees are technically negotiable, brokers often refuse to engage in any meaningful negotiation.  *See* Comm Rep. at 7–8.  The City Council's conclusion that eliminating such unsolicited fees would improve mobility was thus neither "speculation" nor "conjecture," *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001), but rather a logical inference drawn from the ample evidence before it.

Neither Plaintiffs' economic forecasts nor recent trends in the residential rental market alter that analysis.  As the Court noted previously, the City Council specifically sought to address the impact of unsolicited brokers' fees on the upfront cost of moving, which it found contributed to housing immobility.  Comm. Rep. at 7.  In doing so, it considered—but chose to reject—concerns raised about the Act's potential effects on rental prices, saying the Act was "not an attempt to solve the affordability crisis in the city." *Id.* at 10.  Plaintiffs further argue that the FARE Act's effect on consumer choice warrants judicial intervention.  *See* Mot. at 3 ("Consumers who want the option of paying a broker fee instead of higher rent resent having the choice taken away from them by the FARE Act's publication bar.").  The Court disagrees.  The City Council acted in the interest of the 54 percent of the city's renters who indicated they would prefer to pay a higher monthly rent than a broker's fee, notwithstanding the preferences of other renters.  That policy judgment—good or bad—is not a constitutional violation.  *See Vugo*, 931 F.3d at 52 n.9 ("[W]e see no reason why the City may not seek to alleviate a harm when the harm is experienced by forty-one percent of

the population.").  "*Central Hudson* requires not necessarily the single best disposition but one whose scope is in proportion to the interest served."  *Id.* at 52.  The FARE Act satisfies that standard.[3]

The Court therefore concludes that Plaintiffs have not demonstrated a strong likelihood of success on the merits of their appeal.  With respect to the other factors, the City will be substantially injured by an injunction, *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."), and "[t]he public has an interest in seeing its laws enforced," *In re 650 Fifth Ave. & Related Props.*, No. 08-CV-10934, 2017 WL 3834795, at *6 (S.D.N.Y. Sept. 1, 2017), *aff'd sub nom. Levin v. United States*, 774 F. App'x 49 (2d Cir. 2019).  Those two factors, in addition to Plaintiffs' low likelihood of success on the merits, outweigh any harm Plaintiffs may suffer absent an injunction.

Accordingly, Plaintiffs' motion for an injunction pending appeal is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 67.

SO ORDERED.

Dated:     July 10, 2025
           New York, New York

_____
Ronnie Abrams
United States District Judge

---

[3] Plaintiffs further argue that *Clementine Co., LLC v. Adams*, 74 F.4th 77 (2d Cir. 2023), which the Court referenced in its prior Opinion, does not apply here.  Although Plaintiffs are correct that *Clementine* is not a commercial speech case, it nonetheless employs a form of intermediate scrutiny that the Supreme Court has recognized is "substantially similar" to *Central Hudson* in its analysis of whether a regulation advances the government's interest.  *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 537 n.16 (1987).  In any event, the Court's reference to *Clementine* did not alter its conclusion.